### WILLIAM MEALER v. THE STATE.

#### No. 85.  Decided April 29.

**1. Charge of Court—Manslaughter—Homicide in Protection of Another.**—On a trial for murder, where the sole ground of defense was, that defendant fired the fatal shot to save the life of a third party from the knife of deceased, who was engaged in a personal difficulty with him, and the court, in its charge, fully instructed the jury as to every legitimate phase arising from the testimony: *Held*, that there being no evidence of adequate cause, or the cause being inadequate to establish manslaughter, it was not error to refuse to charge upon manslaughter.

**2. Evidence in Support of Reputation of Witness.**—Where a party himself voluntarily introduces evidence which impugns the character of his own witness, he can not be heard to complain that he was subsequently refused, or not permitted, to introduce testimony to show that said witness' reputation for truth and veracity was good.

**3. Counsel as Witness.**—The fact that a proposed witness is counsel in a case, is no legal objection to his competency as a witness.

**4. Same—Impeachment of Witness—Bill of Exception.**—Where a witness was asked whether he had testified to a certain fact, on another trial, and he replied, "that if he was asked the question he had so testified, but that he did not now remember," and it was proposed to impeach him by the testimony of one of the attorneys in the case, who would prove that the witness had not so testified, and the court excluded the offered impeaching testimony, upon the ground that it was bad practice for a counsel in a case to testify therein: *Held*, that while the ruling was erroneous, the bill of exceptions was fatally defective, in that it did not show that the attorney would have testified that the

identical fact was called to the attention of witness, upon which it was proposed to impeach him.

**5. Evidence as to Previous Difficulty.**—On a trial for murder, a defendant can not be heard to complain that the court admitted evidence of a former difficulty between himself and deceased, where the record shows that he cross-examined the witness fully as to the details of said difficulty, and also introduced a witness by whom he had proved the same facts.

**6. Evidence—Threats by Deceased.**—On a trial for murder, where the defense was that the killing was done in the protection of a third party from death or serious bodily injury, and where it further appeared that at the time of the killing defendant himself was in no possible danger: *Held*, that evidence of threats on the part of deceased against defendant was properly excluded by the court, and the offer of such evidence was suggestive of a different motive for the killing from the one on which the defense was based, viz., the protection of another from death or serious bodily injury.

APPEAL from the District Court of Dallas.   Tried below before Hon. CHARLES FRED TUCKER.

On his separate trial under an indictment charging him and one W. J. Sprouse jointly with the murder of one John Webb, appellant was found guilty of murder in the second degree, with punishment assessed at twenty years confinement in the State penitentiary.

The record is quite voluminous.   In brief, the substance of the testimony is, that defendant was a bartender in Lillard's saloon in the town of Garland, Dallas County, Texas.   Webb, the deceased, lived in the neighborhood of the village, and was in the habit of getting drunk every time he came to town.   Two or three weeks, perhaps a month, before the killing these parties had had a difficulty, which was occasioned by defendant's refusing to let deceased have whisky at his bar unless he paid for it in advance.   In this difficulty, defendant threw deceased, who was drunk, out of his bar room into a mud hole in the street, and shot at him once with his pistol while he was upon the ground.   On the day of the homicide deceased and one Harbinson were drunk, at Jackson's saloon, which was across the street from Lillard's saloon, kept by defendant. The barkeeper of Jackson's saloon was one Sprouse.   Harbinson and deceased got to quarrelling and bantering each other about playing cards, and Sprouse told them that they could neither play cards nor quarrel in his saloon, and ordered them out.

They went across the street, still quarrelling and bantering each other, and finally went through the Lillard saloon, kept by defendant, into a back room in the rear of the saloon.   Deceased had a long-bladed knife in his hand and was whittling a pine stick.   There were several parties in the back room of the saloon, and they all testified, that Harbinson and deceased continued to curse each other from the time they first entered the room .

In a very short time after they had gone into this back room, Sprouse, the bartender of the Jackson saloon, came over to the Lillard saloon on

some matter of business, and hearing the loud talking and quarrelling in the back room, he went in there, and seeing the deceased with his open knife still in his hand, he ordered him peremptorily to put it up, which deceased refused to do, and when, according to the testimony of most of the witnesses, Sprouse collared and struck him. Deceased returned his blows, and while the parties were scuffling around, the defendant Mealer, with pistol in hand, fired the fatal shot which killed deceased. According to the testimony of some of the witnesses, Mealer was in the back room looking on and listening to the altercation between Harbinson and deceased, and at the time that Sprouse interfered, and witnessed the difficulty between the latter and deceased. This testimony tended to show that he knew and saw everything up to the time he fired the fatal shot. On the other hand, there was testimony to the effect, that Mealer, hearing the quarrelling and evident difficulty in the back room, rushed in, with pistol in hand, and seeing deceased with uplifted hand, in the attitude of striking Sprouse with his knife, immediately fired upon him. There is yet other evidence which would establish the fact, that at the time the fatal shot was fired, two of the persons in the room had hold of deceased, one by each arm, and that he was powerless to inflict injury upon any person at that moment.

This is a very brief statement of the essential facts in the case. We deem it unnecessary to state the facts bearing upon the questions discussed in the opinion of the court, since they are sufficiently stated in the opinion.

*Bassett, Seay & Muse*, for appellant, filed an elaborate brief and argument, in which the main propositions discussed were the following:

1. The court erred in rejecting the testimony of defendant's counsel, T. F. Nash, upon the ground that said Nash had not been under the rule, and that it was bad practice for counsel to testify, and in refusing to permit said counsel by his testimony to impeach the State's witness George N. Hacker, as shown by defendant's bill of exceptions relating thereto. Boatmeyer's case, 31 Texas Cr. Rep., 473.

2. The court erroneously excluded the testimony touching the good reputation of the defendant's witness J. V. Willis for honesty, truth, and veracity and as a law-abiding citizen in the community in which he lived, in that it appeared that the said Willis had been indicted and acquitted of the charge of offering to bribe the witness Scott, and had testified to the falsity of the statement of said Scott upon the trial of the defendant in relation thereto. Phillips' case, 19 Texas Cr. App., 158, and authorities cited.

3. The court erred in permitting the State to prove, over defendant's objection, the details of a former difficulty between the deceased and de-

fendant, and the hearsay details by the witness Rupert of a difficulty between deceased and others.

4. The court erred in refusing to admit in evidence the threats of the deceased against the defendant, both communicated and uncommunicated, in that the threats of the deceased communicated to the defendant prior to the killing were pertinent as tending to show the defendant's belief as to the dangerous character of the deceased, and in determining the appearances of danger to Sprouse from Webb, as viewed from defendant's standpoint; and upon the issue of manslaughter and existence or nonexistence of malice by defendant in the killing. Howard's case, 23 Texas Cr. App., 277.

*R. L. Henry*, Assistant Attorney-General, for the State.—In the first bill of exceptions appellant contends, that the court should have charged the law of manslaughter.

Now this homicide was either murder or self-defense. To get manslaughter into the case, appellant contends for the following rule: If Mealer heard deceased (Webb) and Sprouse quarrelling in a back room of the saloon, and became excited at hearing the quarrelling, and ran into the room and found the two men in a fight with their fists, and killed Webb, or indeed either combatant, he would only be guilty of manslaughter. Such a contention is not the law. The statute settles this question. Penal Code, arts. 593–595, 597.

The court clearly submitted the law in regard to murder and a homicide in defense of the life of another. That is all there is in this case. Penal Code, arts. 570, 571, 572; Kendall's case, 8 Texas Cr. App., 574.

The reputation of the witness J. V. Willis was not attacked by the State; therefore it was not in issue. Whatever was brought out by the testimony of Aaron Scott in regard to the offer of Willis to bribe Scott was brought out by appellant against his own witness.

In regard to impeaching the testimony of Hacker by Judge Nash, it is stated, that the bill does not show that the witness was questioned about the points upon which the proposed impeachment was offered, or that his attention was called to such matters. Hyden v. The State, 31 Texas Cr. Rep., 401.

SIMKINS, JUDGE.—The appellant complains that the court erred in refusing to charge manslaughter.

The testimony shows, that one Sprouse and deceased got into a personal difficulty in a small room in the rear of a saloon in which appellant was barkeeper; that appellant went into the room with his pistol, and shot deceased in the stomach. The defense was, that appellant shot to save the life of Sprouse from deceased, who was fighting him with a knife. The court charged on murder in both degrees, and on justifiable

homicide in the protection of the person of another from death or serious bodily injury, or the reasonable expectation or fear of the same. We do not think the court erred. There was no evidence of manslaughter in the case, and could not be. There was no evidence of any adequate cause, and if passion existed, it was upon inadequate cause. The sole ground of defense was the actual or apparent danger to Sprouse, and this was submitted in every phase that the evidence fairly suggested, and a special charge given at appellant's request certainly emphasized this defense.

Counsel filed elaborate bills of exception to nearly every portion of the general charge, and requested seventeen special charges, which we carefully examined, with an attention and respect due to the ability and industry of counsel; but if any error in the extensive and carefully worded charges of the court can be found, it is that the charges are more favorable to appellant than the evidence justifies.

There is no question that Sprouse began the difficulty. He interfered in a quarrel between deceased and another, ordering deceased to put up a knife with which he was whittling, and with which he was making no demonstrations while engaged in a drunken quarrel. After some objection, deceased closed, or partially closed it, when Sprouse began shoving him back in the corner, and blows were passed between them. Appellant came in the room with a pistol, and killed deceased. Whether he stood leaning on a barrel, watching Sprouse begin the fight, or whether he came in after it began, there is no pretense that he did not hear Sprouse, three times, ordering deceased to put up his knife, and deceased's replies thereto, and therefore knew that Sprouse interfered in the quarrel and began the difficulty. The door between the room and the saloon where defendant was standing was opened, and the quarrelling between deceased and Harbinson had previously drawn the crowd from the saloon into the room; and in fact, in his application for a continuance, the appellant stated he expected to prove by the witness Gibson that appellant could hear the loud talking between Harbinson and deceased, and the conversation between deceased and Sprouse. Under the testimony introduced by the State, it was murder upon express malice; for it was shown, that at the time appellant shot deceased, he (deceased) was being held by two men, and was much intoxicated, and the knife was closed. It was further shown, that appellant had had a previous difficulty with deceased a month before, and shot at him, and subsequently threatened to kill him if he ever got into a difficulty with him again. We think the verdict is singularly lenient.

Appellant complains, that the court erred in refusing to allow certain citizens of Dallas County to prove that the reputation of the witness Willis for truth and veracity was good. The court did not err. Appellant himself introduced evidence of the fact that the State's witness Aaron

Scott agreed to accept a bribe from Willis. He then introduced Willis, who testified he had made no such offer, and that Scott's reputation for truth and veracity was bad, and appellant then offered testimony to show that Willis' reputation for truth and veracity was good. The necessity for such testimony, if any existed, having been voluntarily made by the act of appellant himself, he can not complain of the refusal of the court to admit the testimony offered.

Appellant also complains, that the court erred in refusing to permit Judge Nash to testify for the purpose of impeaching the State's witness Hacker. Hacker was asked by appellant whether he had testified in the trial of Sprouse as to the manner in which deceased was held when he was killed by appellant, and replied he did not remember; that if he was asked the question, he had so testified; that he had been questioned fully on that trial. Appellant then offered Judge Nash to prove that the witness had not so testified. The ground upon which the court excluded the offered testimony was certainly erroneous, to-wit, that the witness was the counsel in both trials, and it was bad practice for a counsel in a case to testify therein. However correct as a moral proposition, it is not a legal objection. Still, the court did not err in excluding the testimony, for the bill of exceptions does not show that the witness Nash would have testified that the identical fact was called to the attention of the witness Hacker on the Sprouse trial, upon which it was now proposed to impeach him.

Appellant also claims, that the court erred in admitting the details of a former difficulty between appellant and deceased. The record shows that the appellant cross-examined the State witness as to all the details of the difficulty, and that he also introduced the witness Erwin and proved the same facts, and he can not be now heard to complain.

There was certainly no error in the refusal of the court to permit the appellant to prove threats against himself on the part of deceased. The appellant was in no possible danger when he shot deceased. In fact, it seems questionable whether deceased knew of his presence, for he was scuffling with Sprouse and a railway employe when he was shot by appellant. The offered proof of threats suggests a different motive for the killing rather than the protection of Sprouse, a suggestion strongly intensified by the previous threats made by appellant against the deceased, and his effort to kill deceased a month previously.

The judgment is affirmed.

*Affirmed.*

Judges all present and concurring.