**Affirmed and Majority and Concurring Opinions filed September 29, 2011.**



In The

# Fourteenth Court of Appeals

————————————

## NO. 14-10-00292-CR

————————————

**LEON CHARLES JOHNSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1187678**

## M A J O R I T Y   O P I N I O N

A jury convicted appellant Leon Charles Johnson on one count of murder. Punishment was assessed at sixty years' imprisonment. In a single issue, appellant contends the trial court abused its discretion by denying defense counsel's motion to withdraw. We find that the following factors are relevant in our review of the trial court's decision: (1) whether counsel offered good cause to withdraw; (2) the necessity for the withdrawal; (3) the client's Sixth Amendment right to counsel of choice; (4) the client's Sixth Amendment right to call witnesses in his own defense; (5) the disruption that may

result to the trial proceedings as a result of counsel's withdrawal; and (6) counsel's role, if any, in creating the need to withdraw. After analyzing each of these factors we conclude that the trial court did not abuse his discretion in denying the motion. Accordingly, we affirm.

## BACKGROUND

Appellant was charged by indictment with the homicide of Blake Lunde. On the afternoon of April 5, 2008, Lunde died from a penetrating gunshot wound to the torso. In the moments before being shot, Lunde was driving away from a gas station, where a fight had just erupted between his friend, Fred Soufflee, and approximately five other men. Soufflee testified that as he and Lunde escaped, appellant started shooting at their vehicle from a distance of about four or five feet. Lunde was pronounced dead at the scene.

Following the shooting, a nearby apartment complex was canvassed for possible witnesses. Based on the ensuing investigation, two witnesses from the complex were called to testify on behalf of the State: Gabbriel Johnson, who observed the shooting from the parking lot, and Jessica Walker, who witnessed the incident from her balcony. Both witnesses positively identified appellant as the shooter. Gabbriel[1], who is unrelated to appellant, specifically testified that she saw appellant obtain a gun from someone in the complex just before the shooting occurred. When she later heard shots being fired, Gabbriel claimed that she turned around from where she was sitting and witnessed appellant shooting at a truck.

On cross-examination, Thomas Lewis, one of appellant's two trial attorneys, questioned whether Gabbriel had actually witnessed the shooting as she claimed:

Q.     Ms. Johnson, you and I have had a discussion in the Harris County jail on the second day of March about this case, haven't we?

A.     Yes.

---

[1] To avoid any confusion with appellant, we refer to Gabbriel Johnson by her first name only.

2

Q.      And I asked you questions about this case, didn't I?

A.      Yes.

Q.      And you answered my questions, didn't you?

A.      Yes.

Q.      Isn't it true that you told me you didn't see the shooting at that time?

A.      No.

In a bench conference, Lewis moved immediately for a mistrial and to withdraw as counsel of record. With the jury retired, the following exchange occurred:

Mr. Lewis:      Your Honor, I have a Motion for a Mistrial and a Motion to Withdraw as attorney of record. And the basis for these motions is that I am now a witness in the case. I am a witness as to a prior inconsistent statement by a witness, Gabbriel Johnson. And in support of that motion, may I make a bill?

The Court:      Well, I'm going to ask you this question: Did you know that this witness was going to testify?

Mr. Lewis:      Yes, I did.

The Court:      Did you know that when you went over to talk to her?

Mr. Lewis:      Yes, I did.

The Court:      And you went by yourself?

Mr. Lewis:      Yes, I did.

The Court:      Why? Why wouldn't you take an investigator or somebody else to be there so you could call them as a witness in case she testified in a different way?

Mr. Lewis:      I thought that if there was anything about the conversation that led me to believe that she would change her story that I would return and make a record of it.

The Court:      And you -- let's start it this way: I'm assuming that she gave a statement to the police?

3

[Prosecutor]: That's correct, Judge.

The Court: At some point in time during this investigation or before this case went to trial, she said to law enforcement that she saw the shooting.

Mr. Lewis: No. We have her statement --

The Court: I'm not asking you.

[Prosecutor]: Yes, Judge.

The Court: So, there was at least some statement by this witness at some point in time prior to today that she saw this defendant with a gun doing some shooting?

[Prosecutor]: Yes, Judge.

The Court: Okay. So, Mr. Lewis, knowing that, you went into the jail to talk to her but didn't take anybody with you in case she changed her story?

Mr. Lewis: Judge, the offense report that was made available to me indicates that this witness told the police that she saw Mr. Johnson around the time of the shooting and that she saw him immediately afterwards, but the offense report does not indicate that she saw the actual shooting take place and be done by Mr. Johnson.

The Court: Which offense report?

Mr. Lewis: Judge, if I may have a moment, I'll find it.

The Court: Is there only one offense report that has that information?

[Prosecutor]: I can read 2.053. This is a statement from Gabbriel Johnson. I'll just cut to the pertinent part. "Leon got a gun, ran across the field, and started shooting at the truck. Leon had fought the guy at the gas station. Gabbriel does not know -- "

The Court: So, there's something in the report showing that.

4

Mr. Lewis: But she does not say in the statement that she actually saw the shooting take place. She says she saw him run back and forth with the gun and heard the shots.

The Court: Okay. Well, the point being is that you still went in there without somebody else to come in and testify. So, I'm going to have to deny your Motion for a Mistrial and your Motion to Withdraw.

The proceedings resumed without Lewis ever making his bill of exceptions. Ultimately, the defense rested without presenting any evidence. Lewis never called himself to testify, nor was he called by co-counsel. On appeal, appellant argues that the trial court erred by denying Lewis's motion to withdraw.

## STANDARD OF REVIEW

We review a trial court's decision on an attorney's motion to withdraw for an abuse of discretion. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000); *Brewer v. State*, 649 S.W.2d 628, 631 (Tex. Crim. App. 1983). The trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). As long as the trial court's ruling falls within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997). Under this standard, we may only consider the information presented to the trial court at the time of its decision. *Montgomery v. State*, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990); *Williams v. State*, 154 S.W.3d 800, 802 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd).

Existing case law has not articulated a clear, governing standard for determining whether a trial court acts arbitrarily when ruling on a motion to withdraw. While a number of opinions have examined a trial court's decision on an attorney's motion to withdraw, such motions have generally been based on disagreements between counsel and client. Often, clients will seek substitute representation after complaining of

personality conflicts with their appointed counsel. *See, e.g.*, *King*, 29 S.W.3d at 565–66; *Viges v. State*, 508 S.W.2d 76, 76–77 (Tex. Crim. App. 1974). Occasionally, retained counsel may also seek to withdraw because the client is uncooperative or unwilling to pay legal fees. *See, e.g.*, *Wallace v. State*, 618 S.W.2d 67, 70 (Tex. Crim. App. 1981); *Ahmadi v. State*, 864 S.W.2d 776, 781 (Tex. App.—Fort Worth 1993, pet. ref'd). In such cases, reviewing courts do not appear to follow any specific guidelines when evaluating the trial court's decision. Rather, courts tend to examine the individual circumstances of each case. *See, e.g.*, *King*, 29 S.W.3d at 565–66; *see also Solis v. State*, 792 S.W.2d 95, 100 (observing that "[c]onflicts of personality and disagreements between counsel and client are not automatic grounds for withdrawal.").

Appellant's case differs from prior precedent because the attorney here moved to withdraw, not out of disagreement with the client, but in order to testify as a material witness on behalf of the client. To our knowledge, only two cases have been decided with similar issues and fact patterns, and both are unreported memorandum opinions lacking precedential value. *See Ramirez v. State*, No. 01-04-00196-CR, 2005 WL 2123791, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2005, pet. ref'd) (mem. op., not designated for publication); *Joiner v. State*, No. 05-91-01093-CR, 1993 WL 524693, at *3–4 (Tex. App.—Dallas Dec. 17, 1993, no pet.) (mem. op., not designated for publication). As with the majority of cases dealing with an attorney's motion to withdraw, these nonbinding opinions fail to articulate any specific guidelines that might be useful in evaluating the trial court's decision.

In the absence of a governing test, we must examine the circumstances of each case before deciding whether a trial court abuses its discretion. *Cf. Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982) (balancing a number of case-specific factors when evaluating whether a motion for continuance should have been granted to afford a defendant his counsel of choice). Though not an exhaustive list, we find that the following factors are relevant in evaluating a trial court's decision on counsel's motion to

6

withdraw: (1) whether counsel offered good cause to withdraw; (2) the necessity for the withdrawal; (3) a client's Sixth Amendment right to counsel of choice; (4) a client's Sixth Amendment right to call witnesses in his own defense; (5) the disruption that may result to the trial proceedings as a result of the attorney's withdrawal; and (6) the attorney's role, if any, in creating the need to withdraw. After balancing all of these factors, we conclude that the trial court did not abuse his discretion in denying the motion to withdraw.

## ANALYSIS

We will examine each of the factors outlined above.

### I.       Good Cause for Withdrawal

Under the Code of Criminal Procedure, an appointed attorney must represent the defendant until the attorney "is relieved of his duties by the court or replaced by other counsel after a finding of good cause is entered on the record." Tex. Code Crim. Proc. Ann. art. 26.04(j)(2) (West 2010). We therefore consider whether counsel offered good cause for withdrawing from this case.

Lewis requested withdrawal in order to testify as a witness. Though he never made a complete offer of proof, we can reasonably infer from the record that Lewis would have testified that Gabbriel denied seeing the shooting during their jailhouse interview. *See* Tex. R. Evid. 103(a)(2) (stating that an offer of proof may be made "apparent from the context within which questions were asked"). Lewis's testimony would have impeached Gabbriel's version of the events, which may have been material to appellant's defense. This factor would support granting the motion.

### II.       The Necessity for the Withdrawal

Because Lewis sought to testify as a witness, appellant believes the trial court was *required* to grant his motion to withdraw. In support of this proposition, appellant relies

7

on the disciplinary rule that lawyers should not serve in the dual role of advocate and witness in the same proceeding.

Under Rule 3.08 of the Texas Disciplinary Rules, a lawyer should not represent a client if the lawyer knows or believes he may be a witness "necessary to establish an essential fact" on behalf of the client. Tex. Disciplinary Rules Prof'l Conduct R. 3.08(a), *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G, app. A (West 2005) (Tex. State Bar R. art. X, § 9). Rule 3.08 was promulgated as a disciplinary standard, and not a procedural rule for attorney disqualification. Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 9. Nevertheless, Texas courts often reference the Rule as a guideline when determining whether a lawyer should discontinue his representation of a client. *See, e.g.*, *Gonzalez v. State*, 117 S.W.3d 831, 837–38 (Tex. Crim. App. 2003); *see also Keeter v. State*, 175 S.W.3d 746, 761 n.17 (Tex. Crim. App. 2005) (noting parenthetically that "State and defense lawyers should not testify before the jury").

Our court has previously recognized two policy concerns implicit within Rule 3.08 considerations. *See Gonzalez v. State*, 63 S.W.3d 865, 876 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 117 S.W.3d 831 (Tex. Crim. App. 2003). The first concern addresses any harm the client may suffer from counsel assuming the dual role of advocate and witness. *Id.* The second concern addresses any confusion that may result for the trier of fact. *Id.* We examine each in turn.

A.    Harm to the Client

The first and "primary concern" under Rule 3.08 is that the client's case may be compromised by counsel assuming the dual role of advocate–witness. *Id.*; *see also House v. State*, 947 S.W.2d 251, 253 (Tex. Crim. App. 1997) ("The main focus of the rule is a recognition of potential harm to the offending lawyer's client when the lawyer assumes dual roles of advocate–witness."). Harm can result to the client because these roles are not always compatible. An advocate serves in a representative capacity, and therefore, counsel is expected to be partial to the interests of the client. Witnesses, by contrast, are

expected to assume an objective role. To be effective as witnesses, they must normally be nonpartisan and detached from the trial proceedings. *See Dreyer v. State*, 309 S.W.3d 751, 756–57 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (Sullivan, J., concurring).

Because an advocate–witness wears two hats, being at once both partisan and nonpartisan, the credibility of an advocate becomes subject to question whenever he takes the stand to testify. Rule 3.08 discourages this practice because the client is typically served better when the credibility of his witnesses cannot be doubted. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 9.

In this case, appellant contends that harm is shown by the fact that Lewis *could not* testify. We do not believe that appellant can complain of this specific type of harm for the first time on appeal. Lewis orally moved to withdraw; he did not explicitly request to testify. In fact, at no point during the proceeding did Lewis ever attempt to call himself to the stand. Lewis's co-counsel similarly failed to call Lewis as a witness. Insofar as appellant complains that the trial court's ruling denied him the right to call Lewis as a witness, we conclude that error has not been preserved. *See* Tex. R. App. P. 33.1; *cf. Jacobs v. State*, 787 S.W.2d 397, 407 (Tex. Crim. App. 1990) (finding no harm where defendant's motion to disqualify the district attorney was denied and where the district attorney was never called to testify during the guilt–innocence phase of trial).

Assuming appellant preserved this point, the harm to the client was slight. Based on his implied offer of proof, Lewis's testimony would have been limited to impeachment. The record does not show that counsel would have introduced substantive evidence that appellant was not guilty of the offense. Moreover, Lewis had already cross-examined Gabbriel on the alleged inconsistencies in her prior statements. The effect of his questioning would have been obvious to the reasonable juror.

9

B.      Confusion for the Trier of Fact

The second policy concern under Rule 3.08 addresses the possible confusion that can result for the trier of fact. *See Gonzalez*, 63 S.W.3d at 876. When the two roles are combined, "[i]t may not be clear whether a statement by an advocate–witness should be taken as proof or as an analysis of the proof." Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 4. Especially when counsel refers to matters of personal knowledge, whether through argument or through questioning, the resulting confusion may prejudice the opposing party, who is unable to clarify or impeach counsel's statements. *See Gonzalez*, 117 S.W.3d at 840.

Although this is an important factor, it does not always require granting a motion to withdraw (or to disqualify). Courts have recognized that a lawyer can still testify at trial. *See Ramon v. State*, 159 S.W.3d 927, 931 (Tex. Crim. App. 2004) (establishing a standard for when a prosecutor may testify to an essential fact) (citing *Brown v. State*, 921 S.W.2d 227, 231 (Tex. Crim. App. 1996) (Keller, J., concurring)); *Flores v. State*, 155 S.W.3d 144 (Tex. Crim. App. 2004) (holding that defense counsel may be forced to testify if the State can demonstrate a compelling need); *Shannon v. State*, 284 S.W. 586 (Tex. Crim. App. 1926) (holding that the trial court should not have excluded defense counsel's impeachment testimony); *Mealer v. State*, 22 S.W. 142 (Tex. Crim. App. 1893) (holding that defense counsel should not have been prevented from taking the stand on the sole basis that he was an attorney).

C.      Application of Rule 3.08

Only a limited number of criminal cases have discussed Rule 3.08, and each of them has touched upon issues primarily relating to attorney disqualifications. In *Gonzalez*, for instance, the State filed a pretrial motion to disqualify defense counsel because he was expected to testify on a contested matter bearing directly on his client's guilt. *See Gonzalez*, 117 S.W.3d at 835–36. The Texas Court of Criminal Appeals held

10

that the State would have been prejudiced by counsel's representation regardless of whether counsel actually testified:

> If counsel were to have testified, the State would have been prejudiced not only by the undue weight jurors might have attach [sic] to counsel's testimony, but also by the confusion that would most likely have resulted during argument regarding whether counsel was summarizing evidence or further testifying as to personal knowledge. However, even if [counsel] did not testify, but referred to his own recollection of the events through cross-examination, the State would have been prejudiced by the implication to the jury that his questions represented the truth based on his personal knowledge of what occurred. The State would have been prejudiced by the inability to clarify counsel's testimony and impeach counsel's credibility.

*Id.* at 840.

In *Harrison v. State*, another disqualification case, the Court of Criminal Appeals considered whether a mistrial was supported by "manifest necessity" after counsel injected his credibility into the proceeding. *Harrison v. State*, 788 S.W.2d 18 (Tex. Crim. App. 1990). During cross-examination, counsel attempted to impeach the State's witness by referring to matters of personal knowledge. *Id.* at 20. The trial court subsequently disqualified counsel on the State's motion, then granted a mistrial so that the State might have the option of calling counsel as a witness in the defendant's retrial. *Id.* at 21. The Court of Criminal Appeals held that counsel's disqualification was not justified because he did not "irreversibly inject" his credibility as an issue in the trial. *Id.* at 23. Rather, the court found that the questions and personal references raised by counsel were of "merely tangential importance" to the proceeding. *Id.*

By characterizing counsel's questioning as "tangential," the *Harrison* Court distinguished the case from the Second Circuit's analysis in *United States v. Kwang Fu Peng*, 766 F.2d 82 (2d Cir. 1985). As with *Harrison*, the *Kwang Fu Peng* case arose following the trial court's declaration of a mistrial. *Id.* at 83. Unlike *Harrison*, however, the Second Circuit determined that the mistrial was supported by manifest necessity because defense counsel had irreversibly injected his credibility into the proceedings. *Id.*

11

at 86. The circumstances were most unusual in that counsel was found to have participated in an event directly bearing on his client's charged offense. *Id.* Citing a number of disciplinary standards and a rule against unsworn witnesses, the court found that counsel's disqualification was required, otherwise the jury would be at risk of misinterpreting his questions and advocacy as substantive proof. *Id.* at 86–87.

In their briefing, the parties have argued at great length as to whether appellant's case is more analogous to *Harrison* or *Kwang Fu Peng*. Without deciding whether Lewis's impeachment evidence was of "merely tangential importance," we find these cases are inapplicable to the issue under our review. *Harrison* and *Kwang Fu Peng* involved issues concerning attorney disqualifications, not motions to withdraw. Both cases were decided after examining whether the opposing party would suffer prejudice as a result of the attorney's dual role. The concern in this case is qualitatively different. Appellant focuses not on the prejudice that may befall the opposing party, but on the harm that he would suffer because of counsel being restricted to the role of advocate. In this respect, appellant focuses on the first policy concern recognized under Rule 3.08, not the second. *See* Tex. Disciplinary Rules Prof'l Conduct R. 3.08 cmt. 9; *Gonzalez*, 63 S.W.3d at 876.

Because this is not a case involving attorney disqualifications, we do not believe that appellant is required to demonstrate actual prejudice before counsel is permitted to withdraw. Actual prejudice is a difficult standard and more properly reserved in adversarial motions. *See Gonzalez*, 117 S.W.3d at 839 ("It is well settled that a party seeking to disqualify the opponent's attorney for violation of an ethical rule must demonstrate that such violation will result in actual prejudice to the moving party."). Moreover, an actual prejudice standard would not always account for the variety of factors we find relevant in determining whether a trial court abuses its discretion. Indeed, if counsel can withdraw in advance of trial without any risk to the integrity of the proceedings, we do not see any reason why a defendant must show that counsel's

continued representation actually prejudiced him before a denial on the motion is held reversible. That burden is unnecessarily high, especially where counsel puts forth legitimate reasons for the withdrawal that also serve the client's best interest.

This factor—necessity for withdrawal—supports granting of the motion to withdraw. Although the argument that the client was harmed from the dual role was waived because Lewis did not testify, there was a potential for confusion of the trier of fact. Lewis presumably did not call himself as a witness because he did not want to put himself in the position of confusing the trier of fact.

### III. The Client's Sixth Amendment Right To Counsel of Choice

A defendant in a criminal proceeding has certain constitutional and statutory guarantees, including the assistance of counsel. *See* U.S. Const. amend. VI; Tex. Const. art. 1, § 10; Tex. Code Crim. Proc. Ann. art. 1.05; *Gideon v. Wainwright*, 372 U.S. 335 (1963). This right to assistance of counsel contemplates that a defendant may obtain counsel of his own choosing. *Powell v. Alabama*, 287 U.S. 45, 53 (1932); *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981). Moreover, this right may not be impeded merely for a "myopic insistence upon expeditiousness." *See Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Courts have analyzed this right in connection with motions to withdraw.

While this is a factor for the trial court to consider, this argument was not made to the trial court. As a separate point of error, it would have been waived. *See* Tex. R. App. P. 33.1; *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) ("[E]ven constitutional errors may be waived by failure to object at trial.").

In addition, this factor can be weighed against the disruption to the judicial system, as outlined in Section V below. A defendant's right to counsel does not encompass an absolute right to counsel of choice. A defendant has no right to an advocate who is not a member of the bar, an attorney he cannot afford or who declines

representation, or an attorney who has a previous or ongoing relationship with an opposing party. *Wheat v. United States*, 486 U.S. 153, 159 (1988); *see also Roberson v. State*, 741 S.W.2d 563, 564 (Tex. App.—Texarkana 1987, no pet.) (observing in the context of a motion to withdraw that the "Sixth Amendment guarantee of right to counsel does not include the right to appointed counsel of choice"). Thus, the defendant's interest in counsel can be outweighed by overriding concerns for the integrity of the judicial process and "the trial court's need for prompt, orderly, effective and efficient administration of justice." *Emerson v. State*, 756 S.W.2d 364, 369 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd) (citing *Windham*, 634 S.W.2d at 720); *see also Green v. State*, 840 S.W.2d 394, 408 (Tex. Crim. App. 1992) ("[T]he right to counsel may not be manipulated so as to obstruct the judicial process or interfere with the administration of justice."), *abrogated on other grounds by Trevino v. State*, 991 S.W.2d 849 (Tex. Crim. App. 1999).

IV.     The Client's Sixth Amendment Right to Call Witnesses in His Defense

A criminal defendant has a Sixth Amendment right to call witnesses in his own defense. *See Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). The right is not absolute, and is subject to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.*; *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998) (observing that the right to present evidence is subject to reasonable restrictions designed to accommodate other legitimate interests in the criminal trial process).

Appellant complains that the trial court's ruling denied him the constitutional right to call Lewis as a witness. But Lewis did not attempt to call himself as a witness. The trial court made no ruling on this issue. As a separate point of error, it would have been waived. *See* Tex. R. App. P. 33.1.

## V. The Disruption to the Trial Proceedings

As with mistrials and the disqualifications of counsel, attorney withdrawals can cause serious disruptions to the administration of a trial. *See In re Sanders*, 153 S.W.3d 54, 57 (Tex. 2005) (observing that disqualification causes immediate harm "by depriving a party of its chosen counsel and disrupting court proceedings"); *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (considering a motion for mistrial "the most serious action of ending the trial"). An attorney's withdrawal inevitably results in delay of some sort, thereby "increasing the chances of witness unavailability or memory failure, the disappearance of evidence, and a delay of justice for both appellant and the community." *Coleman v. State*, 246 S.W.3d 76, 85 (Tex. Crim. App. 2008).

The disruption from Lewis's withdrawal would have been obvious. Lewis moved to withdraw during the middle of trial, after several witnesses had already testified. By this stage of the trial, Lewis was the only one of appellant's two attorneys of record to actively participate in the proceedings. He presented the opening statement and conducted all cross-examinations, while appellant's second attorney asked no questions on the record nor made any arguments to the trial court. The record does not reveal whether appellant's second attorney of record was capable of leading the representation in Lewis's place. In fact, Lewis did not even pursue that as an option, moving instead for a mistrial, the most serious of trial remedies. Lewis's withdrawal would have immediately halted the proceedings during a critical moment in the trial, causing a disruption that certainly factored into the trial court's decision. This factor supports the trial judge's decision.

## VI. Counsel's Role in Creating the Need for Withdrawal

The trial court questioned Lewis about his role in creating the need for the withdrawal, which references principles raised in the *Ramon* decision. In *Ramon v. State*, the court held that a prosecutor should not testify as a witness unless the prosecutor can demonstrate (1) that her testimony is necessary; (2) that the need for her testimony could

not have been reasonably anticipated; and (3) that she took reasonable precautions to prevent herself from being entangled in the case as a witness. *Ramon*, 159 S.W.3d at 931.

Although this rule was tailored specifically in the context of prosecutors, its underlying principles are relevant whenever an advocate seeks to testify. *See id.* (addressing the concern that the jury may be confused about whether the prosecutor is speaking as an advocate or a witness). Therefore, in deciding whether a trial court abuses its discretion when ruling on a motion to withdraw, we factor into our analysis any precautions the attorney may have taken in advance of trial to prevent from becoming a witness. *See Stearnes v. Clinton*, 780 S.W.2d 216, 224 (Tex. Crim. App. 1989) (recognizing that counsel has a responsibility to interview witnesses without risk of creating an ethical conflict).

In this case, Lewis interviewed Gabbriel knowing that she would testify on behalf of the State. He conducted the interview alone, outside the presence of a third party. Although he claimed that he "would return and make a record" of the interview should Gabbriel change her story, no such record appears to have been made. Counsel failed to take reasonable measures that would prevent himself from becoming a witness. This factor supports the trial court's ruling.

## CONCLUSION

In evaluating whether the trial court's decision comports with guiding legal principles, we have identified six factors, drawn largely from our prior case law and standards of ethics. Although counsel offered a legitimate reason to withdraw, the necessity for the withdrawal was slight, and several additional factors weighed against his motion. Counsel's withdrawal would have caused a serious disruption to the trial and to the administration of justice. Moreover, counsel failed to take precautions from becoming a witness in the case. Balancing all of these factors together, we conclude that the trial court did not abuse its discretion.

We overrule appellant's sole issue and affirm the judgment of the trial court.

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Hedges and Justices Frost and Christopher. (Frost, J., concurring).

Publish — TEX. R. APP. P. 47.2(b).