

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-20-00026-CR

_____

DERRICK DEMOND GRAY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 48546-A

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Burgess

A Gregg County jury convicted Derrick Demond Gray of aggravated assault with a deadly weapon. After the jury found the State's punishment enhancement allegations true, Gray was sentenced to forty years' imprisonment and was ordered to pay a $10,000.00 fine. On appeal, Gray argues that the trial court violated his Sixth Amendment right to be represented by the retained counsel of his choice and that the jury's verdict of guilt is not supported by legally sufficient evidence.

We conclude that the trial court did not violate Gray's right to counsel of his choosing. We also find that legally sufficient evidence supported the jury's finding of guilt. As a result, we affirm the trial court's judgment.

## I.       The Trial Court Did Not Violate Gray's Right to Counsel of His Choosing

### A.        Factual and Procedural Background

Gray's first counsel, Steve Smith, was replaced by hired counsel, Brandt J. Thorson, in April 2019. At a bond reduction hearing on November 5, 2019, after the State noted that the previously set trial was continued at Gray's request in October, the case was set for trial on January 13, 2020. On January 2, Thorson filed a motion for a continuance on the ground that he was "involved in a federal sentencing" in a case also set for January 13.

At a January 8 hearing on Thorson's motion for a continuance, attorney Gerald Smith, who had not yet made any formal appearance in the case, informed the trial court that Gray's family had contacted him and paid him to serve as counsel for Gray. Smith informed the court that he told Thorson about the retention and his intent to "substitute [as counsel] if there [was] a

2

continuance." However, Smith said that he would not be in town on January 13 because of a prepaid vacation and further stated,

> I prepared the motions to substitute but I will not file those if I'm going to be in trial because that's impossible. But he is looking to have an attorney of his choice. I guess I'll speak to him in some kind of way and let him know that even though he's choosing me to be his counsel which he's got a right --. He's specially set. That's something, he'll have to deal with.

The trial court noted that the case had been pending since April 2017, Thorson was Gray's second counsel, and that there had "been continuances filed." Thorson said that he would likely file a motion to withdraw because he had "basically been fired by [his] client."

The trial court labeled Gray's late request for different counsel as "a delay tactic." After hearing that Thorson would be available on January 21 and that Smith would not be ready to try the case, the trial court granted Thorson's motion for a continuance and set the matter for January 21. On January 15, two days before the scheduled pretrial hearing, Thorson filed a motion to withdraw, with Gray's signed consent, even though there was no motion to substitute counsel and Smith had not filed an appearance. The trial court denied Thorson's motion.

### B. Relevant Caselaw and Standard of Review

"A criminal defendant has a right to secure counsel of his or her own choice." *Gilmore v. State*, 323 S.W.3d 250, 264 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006); *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 (1932) ("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice.")). "Deprivation of the right is 'complete' when the defendant is erroneously

3

prevented from being represented by the lawyer he wants, regardless of the quality of representation he received." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 (2006).

However, "the defendant's right to counsel of choice is not absolute." *Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003) (citing *Wheat*, 486 U.S. at 159). "[W]hile there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Id.* (citing *Wheat*, 486 U.S. at 158–60)). Among other things, "a trial court[] [has] wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez-Lopez*, 548 U.S. at 152 (citations omitted); *Childress v. State*, 794 S.W.2d 119, 121 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) ("This right [to obtain counsel of one's own choice] cannot be manipulated so as to obstruct the orderly procedure in the courts and must be balanced with a trial court's need for prompt and efficient administration of justice.") (citing *Thompson v. State*, 447 S.W.2d 920, 921 (Tex. Crim. App. 1969)); *see also Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982).

Because the trial court granted Thorson's motion for a continuance at the hearing, the adverse action Gray complains of is the denial of Thorson's motion to withdraw. "We review a trial court's denial of a motion to withdraw for abuse of discretion." *Barnett v. State*, 344 S.W.3d 6, 24 (Tex. App.—Texarkana 2011, pet. ref'd) (citing *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000)). If "a trial court unreasonably or arbitrarily interferes with the defendant's right to choose counsel, its actions rise to the level of a constitutional violation."

*Gonzalez*, 117 S.W.3d at 837. As long as the trial court's ruling falls within the "zone of reasonable disagreement," the trial court does not abuse its discretion, and we will uphold the ruling. *Johnson v. State*, 352 S.W.3d 224, 227 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (citing *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997)); *see also Rosales v. State*, 841 S.W.2d 368, 375 (Tex. Crim. App. 1992).

### C. Analysis

Here, although Smith made no official appearance and the only written motion for a continuance in this case was granted, both parties refer to the following factors that courts consider in deciding whether to grant a continuance for purposes of obtaining new counsel, including:

> (1) the length of the delay requested, (2) whether other continuances were requested and whether they were denied or granted, (3) the length of time in which the accused's counsel had to prepare for trial, (4) whether another competent attorney was prepared to try the case, (5) the balanced convenience or inconvenience to the witnesses, the opposing counsel, and the trial court, (6) whether the delay is for legitimate or contrived reasons, (7) whether the case was complex or simple, (8) whether a denial of the motion resulted in some identifiable harm to the defendant, [and] (9) the quality of legal representation actually provided.

*Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982); *see Rosales*, 841 S.W.2d at 375. As stated below, these factors show both that the trial court did not abuse its discretion in denying Thorson's motion to withdraw and that the denial of the motion did not operate to violate Gray's right to counsel of his choosing.

Here, the trial court noted that the case had been on its docket since April 2017, had been passed several times for a docket setting, and was continued for trial in October 2019. While

5

Thorson had fully prepared the case and would be ready for trial on January 21, 2020, Smith had just been retained by Gray's family and was not prepared for trial. There was no indication in the record as to how long Smith would need to prepare the case for trial if Thorson were allowed to withdraw. The State, which had been ready for trial, asked for a setting in November. Because Gray had fired another counsel before hiring Thorson and then sought to hire Smith right before trial even though he had notice of the special January setting, the court concluded that Gray was employing delay tactics. Gray's briefing admits that Thorson provided "quality representation as demonstrated by his knowledge of the case and State's witnesses." Smith did not join in the motion to withdraw, and there was no motion for substitution of counsel on file at the time the trial court denied Thorson's motion to withdraw. As a result, we cannot say that the trial court abused its discretion in finding that Gray's right to counsel of his own choosing was outweighed by its need for the prompt and efficient administration of justice.

We overrule Gray's first point of error.

## II. Legally Sufficient Evidence Supported the Jury's Finding of Guilt

### A. Standard of Review

"In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019 pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd)). "Our rigorous legal

6

sufficiency review focuses on the quality of the evidence presented." *Id.* (citing *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring)). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Id.* (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007))).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." *Id.* (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "The 'hypothetically correct' jury charge is 'one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).

## B.     Analysis

Here, the State alleged (1) that Gray committed assault by intentionally, knowingly, or recklessly causing bodily injury to Simone Barnes by striking her with a firearm and (2) that he used or exhibited a deadly weapon, the firearm, during the commission of the assault. *See* TEX. PENAL CODE ANN. §§ 22.01(a)(1), 22.02(a)(2). The State called Barnes to testify about the incident, but she was a hostile witness that did not wish to speak against Gray. As a result, Gray argues that no rational jury could have determined that he used or exhibited a firearm or that

7

Barnes sustained bodily injury because she did not testify about any pain or suffering.[1]  We disagree.

The State introduced a recorded interview between Barnes and Cody Lusk, an officer with the Longview Police Department who responded to the scene.  On the recording, Barnes told Lusk that Gray reached into his pocket for his gun and struck her across the head with the firearm.  The recording shows that Barnes appeared to be in pain and that she was grasping her head, which she had wrapped with a cloth.  Lusk testified that Barnes was crying and "had a small laceration towards the back of her head" and that there was "a lot of blood."  Barnes admitted that she sustained "two holes in [her] head" and that she had accused Gray of causing them.

Lusk found blood on the concrete where the incident occurred and "ammunition rounds on the ground outside."  Barnes's coworker, Orlandria Ja'Cole Miles, testified that she witnessed Barnes and Gray outside of work where the incident occurred and that Barnes came inside the building after speaking with Gray "to use [her] phone so she [could] go to the hospital because . . . when she then came back inside she was full of blood."  According to Miles, Barnes said that Gray had assaulted her and "hit her with a pistol."

To establish that a victim suffered a bodily injury, the State need only show that the victim experienced some pain, as "[a]ny physical pain, however minor, will suffice[.]"  *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012).  "[T]he jury is permitted to draw reasonable inferences from the evidence, including an inference that the victim suffered pain as a result of

---

[1]It is undisputed that a firearm is a deadly weapon per se.  *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A).

her injuries." *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.). "The existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury' within the meaning of the statute." *Id.* (citing *Bolton v. State*, 619 S.W.2d 166, 167 (Tex. Crim. App. 1981)). From the evidence of Barnes's injuries, the jury could infer her pain and suffering.

Viewed in the light most favorable to the jury's verdict of guilt, we conclude that a rational jury could find, beyond a reasonable doubt, that Gray assaulted Barnes by hitting her over the head with a firearm, which was used or exhibited during the commission of the assault, and that Barnes sustained bodily injury as a result. Consequently, we overrule Barnes's last point of error.

## III. Conclusion

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     October 22, 2020
Date Decided:       November 18, 2020

Do Not Publish

9