

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00553-CR

Gilbert **VILLARREAL**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2009CR5696
Honorable Philip A. Kazen Jr., Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:         Rebeca C. Martinez, Justice
                 Patricia O. Alvarez, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  April 29, 2015

AFFIRMED

This case stems from the death of Steve Moy Jr.  Appellant Gilbert Villarreal was convicted by a jury for the offense of murder and sentenced to thirty-eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice.  Villarreal raises several issues on appeal: (1) he was denied the right to counsel of his choice, (2) the evidence is legally insufficient to support the State's murder charge, (3) the trial court erred in admitting several State exhibits, and (4) the trial court erred in instructing the jury on the elements of unlawful carrying of a weapon.  We affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 2, 2009, Yvette and Pete Espinoza threw a birthday party for Steve Moy Jr. Several friends and family members attended, including Melissa Gonzalez (Moy's girlfriend), Darian Reynosa (Melissa's daughter), and Juan Mendoza (Melissa's cousin). At some point during the evening, Juan left the residence and returned with several individuals, including Appellant Gilbert "Mesko" Villarreal and Ventura "Irek" Garcia.

An argument broke out in the kitchen between Villarreal and Moy. The argument escalated into a physical altercation, with several other party members participating in the fray. Villarreal and Moy both ended up in the Espinoza's backyard, and Moy allegedly pushed Villarreal into the family's swing, making him fall to the ground. Witnesses, including Garcia, testified that when Villarreal stood up he pulled out a laser-sight handgun.

Villarreal and Garcia started to leave the residence and made their way to their vehicle parked near the front of the house. As they were running to the car, Garcia testified that he tripped and fell. As Villarreal was attempting to help Garcia to his feet, Garcia contends Moy was approaching him, holding a large wooden planter over his head. According to Garcia, Moy was several steps behind them, when "[Villarreal] opened fire." Moy was struck twice and died at the scene. Two other individuals were shot, but survived.

When the officers arrived at the residence, several witnesses were able to identify Villarreal as the shooter and Garcia as the individual accompanying him. Villarreal was subsequently arrested and brought to the police station for interrogation. Although he initially denied any involvement in the incident, he ultimately confessed to the shooting, claiming self-defense.

Villarreal was charged with the murder of Steve Moy Jr. After a trial with multiple witnesses testifying before the jury, Villarreal was convicted of murder and sentenced to thirty-eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice.

Villarreal raises several issues on appeal. For organizational purposes, we address his issues in the following order: (1) denial of the right to counsel of his choice, (2) the legal sufficiency of the State's evidence to support the murder charge, (3) the trial court's admission of several of the State exhibits, and (4) the trial court's jury instruction on the elements of unlawful carrying of a weapon.

We first turn to Villarreal's contention the trial court deprived him of his right to counsel of his choosing.

### RIGHT TO COUNSEL

After the State rested their case in chief, Villarreal's co-counsel, Jacques LeBlanc stood to address the jury. The trial court immediately stopped the attorney explaining LeBlanc had "not been qualified in front of this jury." Counsel's request to approach the bench was denied, and Villarreal's other counsel, John Herrick, proceeded to make an opening statement.

**A.       Arguments of the Parties**

*1.       Villarreal*

Villarreal contends the trial court violated his Sixth Amendment rights by not allowing his attorney of choice, Jacques LeBlanc, to speak during the trial. He argues the trial court's actions were arbitrary and unreasonable and violated Villarreal's right to due process and his right to choice of counsel. Villarreal contends the trial court did not provide a reason as to why it determined LeBlanc was unqualified to speak in front of the jury. Moreover, Villarreal asserts that LeBlanc was hired because of his prior experience as a district attorney and the trial court was aware of Villarreal's reliance on LeBlanc when it granted Villarreal's previous motion for continuance when LeBlanc could not attend the trial setting.

2.      *State*

The State counters that Villarreal failed to object to the trial court's determination that LeBlanc was unqualified before the jury and the record does not contain any suggestion or evidence that LeBlanc was removed from the proceedings or prevented from assisting Villarreal. Furthermore, even if the trial court erred in preventing LeBlanc from addressing the jury, any error was harmless.

**B.      Standard of Review**

A trial court's unreasonable or arbitrary interference with a defendant's right to choose counsel amounts to a violation of the defendant's Sixth Amendment rights. *Gonzalez v. State*, 117 S.W.3d 831, 837 (Tex. Crim. App. 2003). As long as the trial court's ruling falls within the "zone of reasonable disagreement," the trial court does not abuse its discretion and we will uphold the ruling. *Id.* at 839; *Hobbs v. State*, 359 S.W.3d 919, 926 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Johnson v. State*, 352 S.W.3d 224, 227 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). In determining whether the trial court abused its discretion, "we may only consider the information presented to the trial court at the time of its decision." *Johnson*, 352 S.W.3d at 227–28; *accord Stephenson v. State*, 255 S.W.3d 652, 655 (Tex. App.—Fort Worth 2008, pet. ref'd).

**C.      Right to Counsel**

A defendant's right to have assistance of counsel during a criminal proceeding is guaranteed by both the Texas and United States Constitutions. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *see also* TEX. CODE CRIM. PROC. ANN. art. 1.051(a) (West Supp. 2014) ("A defendant in a criminal matter is entitled to be represented by counsel in an adversarial judicial proceeding."). The right to the assistance of counsel includes the defendant's right to obtain that assistance from retained counsel of his choosing. *United States v. Gonzalez–Lopez*, 548 U.S. 140, 144 (2006); *Gonzalez*, 117 S.W.3d at 836–37; *see also Powell v. Alabama*, 287 U.S. 45, 53 (1932)

("It is hardly necessary to say that the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice."); *Ex parte Prejean*, 625 S.W.2d 731, 733 (Tex. Crim. App. 1981) (stating that right to assistance of counsel, "of course, includes freedom of choice in the selection of counsel by the accused"). "Deprivation of the right is 'complete' when the defendant is erroneously prevented from being represented by the lawyer he wants, regardless of the quality of representation he received." *Gonzalez-Lopez*, 548 U.S. at 148; *Obando v. State*, No. 14-07-00359-CR, 2008 WL 2133292, at *2 (Tex. App.—Houston [14th Dist.] May 20, 2008, no pet.) (mem. op., not designated for publication).

A defendant's right, however, is not absolute. *Gonzalez*, 117 S.W.3d at 837. "[W]hile there is a strong presumption in favor of a defendant's right to retain counsel of choice, this presumption may be overridden by other important considerations relating to the integrity of the judicial process and the fair and orderly administration of justice." *Id*. Among other things, "a trial court [has] wide latitude in balancing the right to counsel of choice against the needs of fairness and against the demands of its calendar." *Gonzalez–Lopez*, 548 U.S. at 151–52, 158 (citation omitted); *accord Martinez v. State*, No. 01-12-00892-CR, 2014 WL 1912544, at *4 (Tex. App.—Houston [1st Dist.] May 13, 2014, no pet.) (mem. op., not designated for publication). Yet, in conducting our analysis, we remain mindful of the Court of Criminal Appeals' admonishment that "courts must exercise caution in disqualifying defense attorneys, especially if less serious means would adequately protect the government's interests." *Gonzalez*, 117 S.W.3d at 837.

"A complete denial of the constitutional right to trial counsel" is a structural error subject to automatic reversal. *Fernandez v. State*, 283 S.W.3d 25, 31 (Tex. App.—San Antonio 2009, no pet.); *see also Johnson v. United States*, 520 U.S. 461, 468–69 (1997); *but see Gonzalez-Lopez*, 548 U.S. at 150–51 ("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice . . . . [T]he right to counsel of choice

does not extend to defendants who require counsel to be appointed for them."); *accord Trammel v. State*, 287 S.W.3d 336, 342–43 (Tex. App.—Fort Worth 2009, no pet.). Here, Villarreal contends he was represented at trial by John Herrick, but denied the representation of Jacques LeBlanc. Accordingly, because the alleged error does not amount to a complete denial of counsel, it does not qualify as structural error. *See Roberts v. State*, 220 S.W.3d 521, 527 (Tex. Crim. App. 2007); *Fernandez*, 283 S.W.3d at 31. Therefore, under Rule 44.2(a), we must reverse the trial court's judgment unless we determine beyond a reasonable doubt that the alleged error did not contribute to Villarreal's conviction or punishment. TEX. R. APP. P. 44.2(a); *accord Kennedy v. State*, No. 05-00-00094-CR, 2001 WL 315664, at *1 (Tex. App.—Dallas Apr. 3, 2001, no pet.) (not designated for publication).

**D.    Proceedings before the Trial Court**

On May 6, 2009, attorney Joel Perez filed a Notice of Appearance of Retained Counsel. On August 7, 2012, John Herrick filed a motion to substitute counsel indicating that both Perez and Herrick were retained, but Herrick would be taking over because Perez "had a breakdown in communication that has destroyed the attorney client relationship." Five months later, on January 7, 2013, attorney Jacques LeBlanc filed an appearance of counsel and Herrick filed a motion for continuance requesting additional time so that LeBlanc could familiarize himself with the file and be available for trial.

The case was called to trial on May 7, 2013. Herrick and LeBlanc appeared as co-counsel during the trial. After the State's presentation of its opening argument, Herrick announced, "Defense will reserve its opening statement until the conclusion of the State's case, Your Honor." Throughout the State's case, and three days of testimony, Herrick made all arguments, objections, and conducted all cross-examination on Villarreal's behalf.

After the State rested its case in chief, the following exchange transpired:

| | |
|---|---|
| Mr. LeBlanc: | Good afternoon, ladies and gentlemen. |
| The Court: | No. No. No. You have not been qualified in front of this jury. Please take a seat. |
| Mr. Herrick: | May we approach, Judge? |
| The Court: | No. You may proceed, however. |
| Mr. Herrick: | I don't understand. We filed appearance of counsel. |
| The Court: | You may proceed, counsel. |
| Mr. Herrick: | All right. Good afternoon . . . |

**E.      Analysis**

*1.      Preservation of Error*

A defendant bears the burden to raise any alleged error to the trial court's attention. TEX. R. APP. P. 33.1(a)(1)(A); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). In order to preserve a complaint for appeal, the party must make a timely and sufficiently specific objection that puts the trial court on notice of the complaint. *See* TEX. R. APP. P. 33.1; *Wilson*, 71 S.W.3d at 349. "Even constitutional errors may be waived by failure to object at trial." *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990).

Here, defense counsel attempted to object and requested to approach the bench. The request was denied by the trial court. We, therefore, assume for purposes of this appeal, that LeBlanc's and Herrick's actions preserved Villarreal's complaint for appeal.

*2.      Villarreal's Counsel of Choice*

Our analysis requires a review of the entire record. Villarreal contends LeBlanc was hired, present at trial and properly licensed in the court in which Villarreal's case was heard. Although the judgment only lists Herrick as the "Attorney for Defendant," the reporter's record lists both Herrick and LeBlanc as attorneys for Villarreal and the record suggests LeBlanc was present for the entire trial. Villarreal's July 14, 2013 motion for new trial also lists Herrick as Villarreal's attorney. The only document in the clerk's record, either signed or otherwise, identifying LeBlanc as an attorney for Villarreal is LeBlanc's appearance notice.

After the trial court instructed LeBlanc to "take a seat," there is no further objection by Villarreal or either counsel. It does not appear the attorneys requested the trial court to reconsider or asked for further explanation as to the trial court's ruling. The record does not support LeBlanc orally assisted during any part of the questioning or objections. Beyond LeBlanc invoking the rule of witness sequestration before the trial began, *see* TEX. R. EVID. 614, the reporter's record does not indicate LeBlanc participated, or attempted to participate, in the presentation or cross-examination of witnesses, discussions regarding the jury charge, closing arguments, or other sidebar discussions.

*3.    Conclusion*

Villarreal had two lawyers present throughout the entire trial. LeBlanc was not expelled from the table. The trial court did not preclude his ability to assist Herrick. The record does not reflect, and Villarreal has not pointed this court to any evidence, that Villarreal was actually prejudiced or harmed in any way by the trial court's order. The purpose of the Sixth Amendment and of Article I, section 10 of the Texas Constitution was met; Villarreal received effective representation by an attorney of his choice. *Gonzalez*, 117 S.W.3d at 836. We, therefore, conclude the trial court did not deny Villarreal his right to retained counsel of his choice. *See Gonzalez-Lopez*, 548 U.S. at 144; *Gonzalez*, 117 S.W.3d at 836.

Even assuming the trial court erroneously excluded LeBlanc's participation, the record is void of any evidence that such error contributed to Villarreal's conviction or punishment. *See* TEX. R. APP. P. 44.2(a) (providing case must reversed unless appellate court finds beyond a reasonable doubt that the alleged error did not contribute to defendant's conviction or punishment). Beyond a request to approach the bench, neither Herrick nor LeBlanc reasserted an objection or created a record including a proffer of LeBlanc's opening or proposed

questioning. We therefore conclude, beyond a reasonable doubt, than any alleged error did not contribute to Villarreal's conviction. Accordingly, we overrule Villarreal's first issue on appeal.

LEGAL SUFFICIENCY—SELF DEFENSE

In his next issue on appeal, Villarreal contends that because there was no evidence adduced at trial negating his claim of self-defense, the evidence was legally insufficient to support a conviction for murder.

## A.      Standard of Review

Contrary to Villarreal's assertions, the question before this court is not whether the State presented evidence refuting Villarreal's self–defense evidence. The defendant, rather, has the burden of producing some evidence to support the claim of self-defense. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)). "Once the defendant produces such evidence, the State" has the burden of disproving the defense. *Id*. The burden of persuasion does not require the State to produce evidence; "rather it requires only that the State prove its case beyond a reasonable doubt." *Id*. "When a jury finds the defendant guilty, [it implicitly finds] against the defensive theory." *Id*.

We examine all of the evidence in a light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt (1) the essential elements of the alleged offense and (2) against appellant on the self–defense issue. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). In our review, we "evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible." *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).

**B.**     **Arguments of the Parties**

    *1.*     *Villarreal*

Villarreal does not argue that he did not shoot Moy; he contends his actions were a matter of self-defense.  Villarreal argues the record only supports that the altercation between Villarreal and Moy was a verbal confrontation prior to *Moy* attacking *Villarreal*.  As evidence, Villarreal points to Garcia's testimony, that he and Garcia retreated on several occasions and that they were pursued by Moy and several other "party-goers."  Only after Garcia tripped and Moy attacked him with a large planter, a threat of deadly force, did Villarreal fire his weapon.

    *2.*     *State*

The State counters that the testimony supports that prior to Villarreal shooting Moy, nothing prevented either Villarreal or Garcia from leaving the residence.  Although Garcia testified that Moy was threatening him with a large planter, during his statement to officers, Villarreal never mentioned Moy using the planter as a weapon.  The jury could have reasonably dismissed Garcia's testimony because no other witness so testified, and the only evidence of a threat on Garcia was during Garcia's unsubstantiated testimony.

**C.     Self Defense**

"A person commits [murder] if he . . . intentionally or knowingly causes the death of an individual [or if he] intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual . . . ."  TEX. PENAL CODE ANN. § 19.02(b)(1), (b)(2) (West 2011).  Under certain circumstances, however, self-defense justifies the use of deadly force. *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011).

To prevail on a claim of self-defense, a defendant must prove that (1) he would have been justified in using force against the other person, and (2) it was reasonable to believe that "deadly force [was] immediately necessary [for protection] against the other's use or attempted use of

unlawful deadly force." *See* TEX. PENAL CODE ANN. § 9.32(a) (West 2011); *Morales*, 357 S.W.3d at 4. Villarreal was required to show that he reasonably believed deadly force was immediately necessary to protect either himself or Garcia from Moy's alleged use or attempted use of unlawful deadly force. TEX. PENAL CODE ANN. § 9.32(a); *Morales*, 357 S.W.3d at 4; *see also* TEX. PENAL CODE ANN. § 9.33 (requiring "the actor reasonably believes that his intervention is immediately necessary to protect the third person").

"Deadly force" is force "intended or known by the actor to cause, or in the manner of its use or its intended use is capable of causing, death or serious bodily injury." TEX. PENAL CODE ANN. § 9.01(3). "Serious bodily injury" is an injury that "creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46).

## D.      Analysis

In the present case, the jury's decision to reject Villarreal's self-defense claim ultimately hinges on the credibility of witnesses. The jury was ultimately required to decide whether Garcia's or the other witnesses' version of the events, or something in between, was supported by the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). The State presented witnesses that both Villarreal and Garcia could have simply driven off and were in a standing position close to the vehicle when Villarreal fired the shots. If believed by the jury, the testimony that both Garcia and Villarreal were leaving the scene of the crime, and Garcia was no longer on the ground when Villarreal turned and shot Moy, is evidence negating Villarreal's claim of self–defense. *See Kirk v. State*, 421 S.W.3d 772, 781 (Tex. App.—Fort Worth 2014, pet. ref'd); *Smith v. State*, 355 S.W.3d 138, 146–47 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

Although Garcia testified that Moy threatened him with a wooden planter, he also testified that Villarreal had already helped him up when Villarreal turned and fired at Moy. The State pointed out two distinct flaws in Garcia's testimony: (1) Villarreal never mentioned a planter or anything in Moy's arms when he made his statement to Detective Mendoza and (2) no other witness testified to seeing Moy threaten Garcia with a planter or other wooden object.

As the sole judge of the witnesses' credibility, the jury was free to accept or reject Garcia's version of the events. *Chambers*, 805 S.W.2d at 461. The jury obviously chose to reject Garcia's testimony. *See Clayton*, 235 S.W.3d at 778; *Chambers*, 805 S.W.2d at 461; *Saxton*, 804 S.W.2d at 913. In doing so, the jury could have reasonably concluded that Villarreal's conduct was inconsistent with his claims of self-defense, or defense of others. *See Chambers*, 805 S.W.2d at 461; *Cleveland v. State*, 177 S.W.3d 374, 380–81 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Contrary to Villarreal's contentions, Garcia's testimony does not conclusively prove a claim of self–defense. *See London v. State*, 325 S.W.3d 197, 203 (Tex. App.—Dallas 2008, pet. ref'd) (op. on reconsideration on PDR); *Denman v. State*, 193 S.W.3d 129, 132–33 (Tex. App.— Houston [1st Dist.] 2006, pet. ref'd) (finding evidence sufficient to support conviction of aggravated assault under *Jackson v. Virginia* despite defendant's claim of self–defense, which was based on testimony of defendant and other witnesses who stated complainant had assaulted or threatened defendant on prior occasions). After reviewing the entire record, we conclude the jury rationally could have found each element of the charged offense was proven beyond a reasonable doubt and that it could have rationally rejected Villarreal's claim of self–defense. *See Zuliani*, 97 S.W.3d at 594. Accordingly, we hold the evidence was sufficient to support Villarreal's conviction for the murder of Steven Moy and we overrule Villarreal's second issue.

### ADMISSIBILITY OF THE STATE'S EXHIBITS

We next turn to Villarreal's contention that the trial court erroneously admitted several of the State's exhibits. The exhibits included photographs of the crime scene, photographs of Villarreal, photographs taken from Villarreal's phone pursuant to a search warrant, and pictures of text messages. Villarreal broadly argues the exhibits were inadmissible because the photographs were (1) more prejudicial than probative, (2) hearsay, and (3) not properly authenticated. We group the exhibits according to the nature of Villarreal's complaints and address each group in turn.

### A. Standard of Review

We review a trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Williams v. State*, 301 S.W.3d 675, 690 (Tex. Crim. App. 2009); *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex. Crim. App. 2006); *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Sandoval v. State*, 409 S.W.3d 259, 281 (Tex. App.—Austin 2013, no pet.). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). When considering a trial court's decision to admit or exclude evidence, we will not reverse the ruling unless it falls outside the "zone of reasonable disagreement." *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007).

### B. Guilt/Innocence Evidence—State's Exhibits 40, 41, 42, 44, 45, 46, 47, 48, 49, 80, 81A, and 82

Exhibits 40, 41, 42, 44, 45, 46, 47, 48, and 49 were photographs taken by the crime scene investigator on the night of the offense. Exhibit 80 is a photograph of Villarreal's MySpace page, 81A is a photograph of Garcia's MySpace page, and photograph 82 is a photograph taken from Garcia's MySpace page of Garcia holding a firearm. The remaining photographs offered during

the guilt/innocence phase were MySpace pictures used to show Villarreal's access to a similar firearm used during the shooting, Villarreal's "ostentatious display of cash" correlating his behavior to witness accounts, and law enforcement's investigation of the murder.

### 1. Arguments of the Parties

Villarreal contends the State failed to authenticate the photographs of the crime scene and the photographs were more prejudicial than probative and that the trial court failed to conduct the necessary balancing test required for admission.

The State counters that several of the photographs depict "various rooms viewed from varying angles" of the crime scene and further explain the testimony of several witnesses.

To be admissible, evidence must be both properly authenticated, *see* TEX. R. EVID. 901, and relevant, *see* TEX. R. EVID. 104.

### 2. Authenticating Evidence

The issue of authentication arises when the relevancy of evidence is conditioned on its identity. *Campbell*, 382 S.W.3d at 548–49. Authentication is generally accomplished by direct testimony from a witness with personal knowledge, or by circumstantial evidence. *See* TEX. R. EVID. 901; *Manuel*, 357 S.W.3d at 74–75. Before a trial court may admit evidence, the proponent must establish that the "the matter in question is what its proponent claims." TEX. R. EVID. 901(a); *accord Campbell*, 382 S.W.3d at 549. There is no abuse of discretion if the trial court "reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007); *Kelley v. State*, 22 S.W.3d 642, 644 (Tex. App.—Waco 2000, pet. ref'd) (concluding admissibility within the discretion of the court when serves "the proper purpose in enlightenment of the jury"). "Printouts of emails, internet chat room dialogues, and cellular phone text messages have all been admitted into evidence when found

to be sufficiently linked to the purported author so as to justify submission to the jury for its ultimate determination of authenticity." *Tienda*, 358 S.W.3d at 639.

The photographs of the crime scene were offered though Lindsay Patten, a crime scene investigator with the Crime Scene Unit at the San Antonio Police Department. As part of her duties, she takes photographs of the crime scene, sketches the scene, videotapes when necessary, and assists in the collection of evidence. Investigator Patten testified the photographs "fairly and accurately represent[ed] the scene."

The authentication for the photographs of the MySpace pages came through several witnesses. *See id.* at 642–46. State's witness twenty-year-old Darian Reynosa, Moy's stepdaughter, knew both Villarreal and Garcia prior to the night of the shooting. She provided officers at the scene with information about the suspects, included directing the officers to the MySpace pages allegedly belonging to Villarreal and Garcia. Additionally San Antonio Police Detective David Snow testified that he printed exhibits 80 and 81 on May 3, 2009, and exhibit 82 on May 4, 2009. The photographs were used during Investigator Mendoza's original interrogation of Villarreal and Villarreal authenticated the photographs at that time.

Accordingly, the trial court did not abuse its discretion in finding the photographs were properly authenticated.

### 3. Relevancy Determination

Texas Rule of Evidence 104(a) dictates whether to admit evidence at trial is a preliminary question. TEX. R. EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637–38 (Tex. Crim. App. 2012). Only relevant evidence is admissible. TEX. R. EVID. 402; *Tienda*, 358 S.W.3d at 638. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401; *accord Tienda*, 358 S.W.3d at 638. A proponent of evidence is not

required to "'rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be.'" *Campbell v. State*, 382 S.W.3d 545, 549 (Tex. App.—Austin 2012, no pet.) (quoting *United States v. Chin*, 371 F.3d 31, 37 (2nd Cir. 2004)). "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda*, 358 S.W.3d at 638; *see also Manuel v. State*, 357 S.W.3d 66, 74 (Tex. App.—Tyler 2011, pet. ref'd) (stating "proponent must only produce sufficient evidence that a reasonable fact finder could properly find genuineness").

Under Rule 403, even relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, . . . or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 requires that a photograph possess some probative value and that its inflammatory nature does not substantially outweigh that probative value. *Williams*, 301 S.W.3d at 690. Once a Rule 403 objection is made, the trial court must weigh the probative value of the evidence to determine if it is substantially outweighed by its potential for unfair prejudice. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

A Rule 403 balancing test includes the following factors:

(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.

*Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). Importantly, the rules of evidence favor the admission of relevant evidence and carry a presumption that relevant evidence

is more probative than prejudicial. *See Williams*, 301 S.W.3d at 690 (reiterating photograph's probative value must not be outweighed by its inflammatory nature); *see also Rayford v. State*, 125 S.W.3d 521, 529 (Tex. Crim. App. 2003); *Hayes v. State*, 85 S.W.3d 809, 815 (Tex. Crim. App. 2002).

The State's exhibits were photographs that were probative of the crime scene, Villarreal's identity, and Villarreal's access to the murder weapon. The photographs of the crime scene are probative of the nature of the crime and the manner of the victim's death. While the photographs are gruesome, "they depict nothing more than the reality of the brutal crime committed." *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995); *see also Saldano v. State*, 232 S.W.3d 77, 101–02 (Tex. Crim. App. 2007); *Hayes*, 85 S.W.3d at 816. The MySpace photographs of Villarreal and Garcia were used to either corroborate or disprove Villarreal's statements to police and witness testimony concerning the alleged murder. *See Prible v. State*, 175 S.W.3d 724, 732–33 (Tex. Crim. App. 2005). Specifically, the photographs were used to depict how Villarreal presented himself at the time of the offense and his access to a weapon like the one used to kill Moy. The officers also used the photograph of the weapon during their interview with Villarreal to negate Villarreal's insistence that he was not a member of a gang.

Given the presumption of admissibility, we conclude the trial court was within its discretion to find the probative value of the photographs depicted in State's exhibits 40, 41, 42, 44, 45, 46, 47, 48, 49, 80, 81A, and 82 substantially outweighed the potential for unfair prejudice. *See Williams*, 301 S.W.3d at 690.

**C.     Punishment Evidence—State's Exhibits 152 through 155**

*1.     Arguments of the Parties*

Villarreal next argues State's exhibits 152 through 155, photographs of Villarreal, had no probative value because Villarreal had already been identified and the manner in which Villarreal was depicted in the photographs was highly prejudicial.

The State contends the photographs were offered during the punishment phase, in direct response to Villarreal's statements that he was not affiliated with a gang, and were relevant to the determination of an appropriate sentence.

*2.     Photographs Suggestive of Gang Involvement*

Exhibits 152 through 155 were photographs offered during the punishment phase and allegedly depicted Villarreal's gang affiliation.  The State offered the photographs to refute Villarreal's denials to his involvement with gangs.  *See Saldano*, 232 S.W.3d at 101–02.

Defense counsel objected:

At this time, defense would object to 152 and 153 and 154 and 155.  They simply have a picture of Mr. Villarreal in them, and we have already identified Mr. Villarreal.  They, are, therefore, 100 percent prejudicial and 0 percent probative.

The trial court overruled the objection.

During his interview with Detective Mendoza, an exhibit played before the jury during the guilt/innocence phase of the trial, Villarreal denied gang involvement.  *Id*.  Exhibits 152 through 155 were photographs procured from Villarreal's cellphone pursuant to a search warrant.  The photographs were offered through an officer with the San Antonio Police Department's Gang Unit with evidence that the gang in question is associated with narcotics sales and that Villarreal was investigated and arrested for drug and weapons offenses.

The Texas Court of Criminal Appeals has held that evidence of gang membership is relevant to a defendant's character and is admissible in the punishment phase of trial.  *Beasley v.*

*State*, 902 S.W.2d 452, 456 (Tex. Crim. App. 1995); *see also Sierra v. State*, 266 S.W.3d 72, 79 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (reasoning that "Article 37.07 explicitly allows the introduction of [gang evidence] evidence"). Villarreal denied his involvement and the State properly presented evidence to contradict his statements. We, therefore, conclude the trial court did not err in determining the photographs were more probative than prejudicial. TEX. R. EVID. 403; *Williams*, 301 S.W.3d at 690; *Rayford*, 125 S.W.3d at 529; *Hayes*, 85 S.W.3d at 815.

**D.      Punishment Evidence—State's Exhibit 145**

The State offered a series of photographs taken from Villarreal's phone, State's exhibits 145 through 155. The photographs were taken from the cellphone pursuant to a search warrant and Villarreal does not contest the warrant on appeal. As such, the concerns expressed by the Court of Criminal Appeals in *Tienda*, those being affirmative links between the cellphone and Villarreal, are not present. *See Tienda*, 358 S.W.3d at 641–42.

Exhibits 146 through 151 include photographs of vehicles, weapons, a small child holding a substantial amount of money, and a beverage. The defense did not object to the admission of these photographs. The defense did, however, object to State's exhibit 145, a picture that appears to depict bags of a green, leafy substance.

> The witness has testified that he doesn't know whether or not Mr. Villarreal was taking the picture or where this picture would even be at.

The trial court overruled the objection. On appeal, Villarreal contends the photograph was not authenticated.

The photograph was not offered for the veracity of the photograph's contents. *See* TEX. R. EVID. 801(a). The officer simply testified that the picture was taken from Villarreal's cellphone and that the photograph offered into evidence was what appeared on the cellphone. *See* TEX. R.

EVID. 901(a); *Tienda*, 358 S.W.3d 641–42. Accordingly, we conclude the trial court did not abuse its discretion in overruling Villarreal's authenticity objection.

### INCLUSION OF UNLAWFUL CARRYING OF A WEAPON INSTRUCTION

In his last issue on appeal, Villarreal contends the trial court erred when it included language in the jury charge regarding Unlawful Carrying of a Weapon.

### A. Standard of Review

When addressing a claim of jury charge error, an appellate court must first decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005

### B. Argument of the Parties

Villarreal contends the unlawful carrying of a weapon instruction should not have been in the charge because the record is void of any evidence that he was actually carrying a weapon. Villarreal concedes the testimony indicates that he "pulled a weapon out but there is no evidence regarding how Mr. Villarreal came to be in possession of the weapon."

The State counters that the charge is correct because Villarreal received an instruction on self-defense, and the trial court also instructed the jury on the presumption of reasonableness and the absence of a duty to retreat under certain circumstances. The State further argues that because both of these provisions require the jury to determine whether Villarreal was engaged in criminal activity, the trial court properly included an instruction defining the charge of unlawful carrying of a deadly weapon.

### C. Defense of Others Instructions

Both the State and Villarreal concede the testimony raised the self-defense and defense of others instruction. Villarreal's objection to the charge is the trial court's inclusion of an instruction defining the elements of unlawful carrying of a deadly weapon.

The charge properly tracked the language of section 9.32(c) of the Texas Penal Code:

> A person who has a right to be present at the location where the deadly force is used, who has not provoked the person against whom the deadly force is used, and who is not engaged in criminal activity at the time the deadly force is used is not required to retreat before using deadly force as described by this section.

*See* TEX. PEN. CODE ANN. § 9.32(c) (West 2011); *see also Morales*, 357 S.W.3d at 5; *Whitney v. State*, 396 S.W.3d 696, 703 (Tex. App.—Fort Worth 2013, pet. ref'd).

The instruction in question was on page two of the court's charge in the section defining terms contained within the charge. The charge read as follows:

> A person commits the offense of unlawful carrying of a weapon if he intentionally and knowingly carries on or about his person a handgun if the person is not on the person's own premises or premises under the person's control or inside or directly en route to a motor vehicle that is owned by the person or under the person's control.

### D.    Analysis

Villarreal requested and received the instruction on self-defense. He argued, however, that because there was no evidence to support that he was "engaged in criminal activity," specifically unlawful carrying of a weapon, the jury charge should not have included an instruction on unlawful carrying of a weapon. The testimony suggests otherwise.

Witnesses testified that Villarreal held the firearm over Moy and shot him. During his statement to Detective Mendoza, Villarreal acknowledged that the firearm belonged to him and that he disposed of the weapon after the shooting. Villarreal does not contest that he shot Moy with the firearm. In order to receive the benefit of the self-defense instruction, the jury would have to find that Villarreal was not engaged in criminal activity. *See Morales*, 357 S.W.3d at 5. Given the conflicting evidence on whether Villarreal was unlawfully carrying a weapon, and unlawful carrying of a weapon can constitute criminal activity, the self-defense instruction warranted an additional instruction on unlawful carrying of a weapon. *Id.* We, therefore, conclude the trial

court did not err in providing the jury with a definition for the alleged criminal activity. *See Ngo*, 175 S.W.3d at 743. Because the trial court did not err, we need not consider harm. *Id.*

## CONCLUSION

Having overruled all of Villarreal's issues on appeal, we affirm the trial court's judgment.

Patricia O. Alvarez, Justice

DO NOT PUBLISH