

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00789-CR

Elisa Wesley **ALVAREZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 83rd Judicial District Court, Val Verde County, Texas
Trial Court No. 2022-0351-CR
Honorable Robert E. Cadena, Judge Presiding

Opinion by:     Lori I. Valenzuela, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                Irene Rios, Justice
                Lori I. Valenzuela, Justice

Delivered and Filed: September 25, 2024

AFFIRMED

A grand jury indicted appellant Elisa Wesley Alvarez on one count of murder. Alvarez pled guilty and elected to have punishment determined by a jury. The jury assessed life imprisonment. In three appellate issues, Alvarez challenges the voluntariness of her plea, the trial court's denial of her trial counsel's motions to withdraw, and the effectiveness of her trial counsel. We affirm.

## BACKGROUND

Alvarez and Jose Martinez ("Jose")—a man married to another woman—met at a bar and began a romantic relationship. Alvarez and Jose's relationship continued until Jose told Alvarez

he did not want to see her anymore if she continued to be possessive. Unsatisfied with this arrangement, Alvarez employed Jose Solis ("Solis") to murder Jose's wife. Previously, Solis had been a day worker for Alvarez, performing various jobs.

Jose had been married to his wife, Mirosalva, for thirty-two years. On the morning of the murder, Mirosalva was preparing Jose's lunch when she heard a car signal its horn three times outside her home. Mirosalva walked outside to see about the commotion. As she approached the vehicle, Solis brandished a gun and shot Mirosalva—killing her. Solis fled to Mexico, where he was arrested. Alvarez was arrested shortly thereafter and indicted for murder.

Alvarez pled guilty and elected to have the jury assess punishment. In exchange for his testimony, Solis entered into a plea bargain and was called to testify as a State's witness. Solis told the jury that Alvarez had communicated with him a few days before trial, imploring him to testify that Jose paid him to murder Mirosalva for insurance money. Solis then testified that Alvarez had a reputation for being a violent person and that Alvarez told him that if he didn't testify in the way she desired, she would hurt his family. Solis added that he saw cocaine at Alvarez's house, that she sold drugs, and that she would sometimes pay him for his work in drugs.

Addressing the sequence of events on the day of the murder, Solis testified that: Alvarez gave him a gun from her home in the morning; he shot Mirosalva at the direction of Alvarez; he was present during a phone call after the murder in which Jose called Alvarez saying his wife had been shot; and Alvarez told him to go to Mexico in her car and keep it there.

On cross-examination, Solis told the jury that no one else was ever around when he and Alvarez discussed the plan to murder Mirosalva and that Alvarez never hurt him or sent anyone to hurt him. He stated he did not tell authorities about the plan to murder Mirosalva because he "already knew too much information" and that he felt as if Alvarez was "going to give [him] something to drink or to eat . . . basically vudu [sic]." Solis admitted to the jury he uses marijuana

and methamphetamine, and following the murder, he was arrested in Mexico for threatening to assault his wife. Discussing vandalism that occurred at his mother-in-law's home in Mexico, Solis implied that Alvarez was the culprit because he does not have "problems with nobody [sic] in Mexico." Finally, the jury heard testimony from Solis regarding his extensive criminal history, including: exportation of a stolen vehicle; reckless driving; evading arrest; assault of a public officer; taking a weapon from an officer; smuggling of a person; and—in connection with his exportation of a stolen vehicle charge—violation of federal probation. Following his testimony, and in accord with Solis's agreement with the State, the trial court sentenced Solis to twenty years' confinement. After Solis testified, his wife briefly testified that Alvarez had a reputation for selling drugs, connections to Mexican authorities, and that Alvarez had previously "killed a man."

Before concluding its case-in-chief, the State called Val Verde County Investigator Marcos Hernandez to the stand. Hernandez testified that the gun used in Mirosalva's murder was bought by Jose Villanueva, whose cousin, Ashley Villanueva, was in a dating relationship with Danny Alvarez ("Danny")—Alvarez's son.

During Alvarez's closing argument, her trial counsel focused on Solis's credibility. Trial counsel asked the jury to "weigh and process the evidence very carefully" and to "come up with a just and reasonable sentence." In its closing, the State asked the jury to begin its deliberations with a starting point of thirty-five years and to return with a "justice [sic] sentence." After deliberating for just under an hour, the jury returned and assessed Alvarez the maximum punishment—life in prison.

In three appellate issues, Alvarez argues: (1) her guilty plea was involuntary; (2) the trial court erred by denying her trial counsel's motions to withdraw; and (3) her trial counsel was constitutionally ineffective.

**INVOLUNTARY PLEA**

In her first issue, Alvarez argues her plea was involuntary because she was improperly admonished by the trial court on the range of punishment and misinformed by trial counsel on the State's recommendations.[1]

On June 27, 2023, the parties appeared for trial. Before beginning the proceedings, trial counsel informed the trial court that Alvarez would enter a plea on the charges. Relevant here, the following exchange occurred:

| | |
|---|---|
| Trial Court: | Okay. So, can you answer my question then, have you had enough time [sic] speak with your attorney about these charges? |
| Alvarez: | Well, yes, I already made the decision to take the 35 years that I'm being offered. |
| Trial Court: | I'm not aware of that plea bargain. I understood you-all said that there was a 45-year offer but. |
| Trial Counsel: | What the prosecutor and I have discussed that when she plead [sic] — sorry — to the jury. The prosecutor would recommend a range of punishment of 35 years, and I would argue for a lower range of punishment and the jury would make a final decision as to what they want to do. |

. . .

| | |
|---|---|
| State: | Can we make sure Ms. Alvarez is aware that that is not a plea bargain like we would have talked about yesterday or last week and the full range of punishment the jury will consider is 5 years to 99. |
| Trial Court: | And/or life imprisonment. |
| State: | And/or life — thank you, Judge. |
| Trial Court: | Mm-hmm and a fine of up to $10,000. That's the full range of punishment. |

---

[1] Alvarez additionally argues her trial counsel was constitutionally ineffective by misrepresenting the range of punishment the State would argue to the jury. We address this argument below in the ineffective assistance of counsel section.

Alvarez:          Last week they had offered me probation and they wanted — I wanted to take that [10] years of probation. I wanted to take those but my attorney didn't tell me anything after that and he only told me the offer was no more.

State:            If I may, Judge, we want to make sure the record is clear on the plea offers. So, the probation was not offered by the State, that was a counter presented from the defense.

Trial Court:      I don't want to get involved in your negotiations, my job is to treat you fairly. So, are you going to plead guilty to this offense? If not, we'll go and pick a jury and try the case. Do you want to plead guilty or not?

Trial Counsel:    How this will work is that you plead guilty first, then we would pick a jury. The prosecutor would present sufficient evidence to support your plea of guilty and she would have a recommended range of punishment of 35 years. Then I would have an opportunity to speak and present things in your favor and ask for a range of punishment lower than 35 years.

Alvarez:          Okay.

Trial Counsel:    Then when we're done speaking, the jury would go to a separate room and they would meet privately and they would decide what your punishment would be. They could decide 35, they could decide 20, they could decide 5, they could give you life; but that would be their decision. So once they retire and go to their private chambers, it's out of our hands and they make the final decision.

Alvarez:          Okay.

Trial Counsel:    Did I explain it well?

Alvarez:          Mm-hmm.

Trial Counsel:    Do you understand?

Alvarez:          Yes.

Trial Counsel:    Okay. So, what the judge needs to know right now is are you pleading guilty?

Alvarez:          Well, I'm not guilty, but that is what —

Trial Court:      I'm not going to accept her plea.

Alvarez: — convenient for me.

Trial Court: And she said she's not guilty. I can't accept her plea. Just that simple.

Trial Counsel: I understand, Judge.

Trial Court: If you want to plead guilty, I'm not here to force you. We'll just go through the whole trial.

Alvarez: No, I will sign it. Otherwise, I'm going [to] get a lot more years of jail and —

Trial Court: That was not how it works. You have to be honest with me and this charge.

Alvarez: No, that is fine. I'll sign it.

Trial Court: No, let me just do this. [reads charge]. Did you understand that charge?

Alvarez: Yes, I understand.

Trial Court: To that charge, how do you plead guilty or not guilty?

Alvarez: I did declare I'm not guilty, but another person is saying that I am guilty.

Trial Court: All right. We'll go ahead and try the case. If you they [sic] say that you're not guilty that's what we have a jury panel for.

Alvarez: My attorney tells me that there are sufficient — that there is sufficient evidence against me.

Trial Court: I'm not here to discuss what you discussed with your attorney. Okay. If you want to plead guilty I'll take it but I'm not going to waste my time here. I've got a lot of people sitting out there waiting. Their lives have been interrupted because of this.

Trial Counsel: Only thing is the only one of two answers to his question, yes, I'm guilty, no, I'm not guilty. If you're going to declare yourself guilty then you say I am guilty. There's no other answer.

. . .

Trial Court: Ms. Alvarez, one last time. Are you feeling pressured in any way?

- 6 -

Alvarez:       I feel that I'm in between a rock and hard place.

Trial Court:   Well, a decision has to be made. But I'm not here to force you either. But you have to respect the process.

Alvarez:       Yes, I know.

Trial Court:   So, the process is if you want to take responsibility now is the time to do it. If you want to put the state to their proof we can do that too. But I can't waste these people's time any longer.

                                    . . .

Trial Court:   What is your plea, it's either guilty or not guilty?

Alvarez:       Guilty, guilty.

Trial Court:   Has anybody forced you in order to plead guilty?

Alvarez:       No.

Trial Court:   Are you pleading guilty freely and voluntarily after you consulted with your attorney?

Alvarez:       Yes.

Trial Court:   Okay. I have to ask you are you pleading guilty because you are, in fact, guilty? It's a "yes" or "no" answer.

Alvarez:       No, yes, I am guilty.

The trial court accepted Alvarez's plea, and punishment was tried to the jury.

*Applicable Law*

Before a trial court can accept a guilty plea, the trial court must admonish the defendant. TEX. CODE CRIM. PROC. art. 26.13(a). The admonishment must include, among other things, "the range of the punishment attached to the offense" and "the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court." *Id* art. 26.13(a)(1), (2). "The

trial court may make the required admonitions either orally or in writing." *Nichols v. State*, 349 S.W.3d 612, 616 (Tex. App.—Texarkana 2011, pet. ref'd); TEX. CODE CRIM. PROC. art. 26.13(d).

Generally, strict compliance with the statute, while preferred, is not necessary as substantial compliance is sufficient. TEX. CODE CRIM. PROC. art. 26.13(c). That is, "[s]ubstantial compliance with the statute is sufficient unless the appellant can 'affirmatively show that [s]he was not aware of the consequences of h[er] plea and that [s]he was misled or harmed by the admonishment of the court.'" *Hall v. State*, 935 S.W.2d 852, 855 (Tex. App.—San Antonio 1996, no pet.) (quoting TEX. CODE CRIM. PROC. art. 26.13(c)); *Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (finding substantial compliance where trial court admonished defendant on an incorrect range of punishment). The failure of a trial court to substantially comply with Article 26.13 does not render automatic reversal; rather, failure to substantially comply is a non-constitutional error reviewed under Texas Rule of Appellate Procedure 44.2(b). *Loch v. State*, 621 S.W.3d 279, 281 (Tex. Crim. App. 2021); TEX. R. APP. P. 44.2(b). In conducting a non-constitutional harm analysis, "a reviewing court must look to the record as a whole to determine whether the defendant was aware of the particular information upon which [s]he should have been admonished—notwithstanding the lack of an admonishment—prior to the time that the trial court accepted h[er] plea." *Davison v. State*, 405 S.W.3d 682, 688 (Tex. Crim. App. 2013).

*Analysis*

Alvarez raises three principal complaints pertaining to the trial court's admonishments. First, Alvarez argues the trial court erred because the range of punishment was orally given to her in part by the trial court and in part by the State. Second, Alvarez claims the trial court wholly failed to admonish her that any punishment recommendation given on behalf of the State was not binding on the trial court or jury. Due to these alleged deficiencies, Alvarez concludes the trial court's procedure did not substantially comply with Article 26.13. Third, Alvarez argues that trial

counsel erroneously told Alvarez the State would recommend thirty-five years. We note that there are no written admonishments.

We agree with Alvarez that the trial court did not strictly comply with Article 26.13. However, we hold the trial court substantially complied. It is clear from the record as a whole that Alvarez was aware of the full range of punishment applicable to her charge when she entered her guilty plea. *See id.* at 688–89 (holding, at the time he entered his plea, the defendant was sufficiently admonished on the range of punishment under the circumstances); TEX. CODE CRIM. PROC. art. 26.13(c) (establishing substantial compliance is sufficient "unless the defendant affirmatively shows that he was not aware of the consequences of his plea *and* that he was misled or harmed by the admonishment of the *court*.") (emphasis added). Although we by no means condone the trial court's piecemeal admonishments, bound by the record before us, we hold the trial court sufficiently explained to Alvarez there was no plea agreement between her and the State and that her plea of guilty may result in the jury assessing the full range of punishment—including the possibility of life in prison. *See Taylor v. State*, 591 S.W.2d 826, 830 (Tex. Crim. App. 1979) ("While the style used is no model form to be condoned or copied, we nevertheless find the trial court was being responsible for giving the admonishment and was satisfying itself as to the propriety of appellant's plea."). Accordingly, limited by the facts of this record, we conclude the trial court substantially complied with Article 26.13's mandates.

Despite not strictly complying with Article 26.13, Alvarez has also failed to show the lack of strict compliance affected her substantial rights. *See* TEX. R. APP. P. 44.2(b). That is, Alvarez failed to establish she was not aware of the consequences of her plea and that she was misled or harmed by the insufficient admonishments of the trial court. TEX. CODE CRIM. PROC. art. 26.13(c). During voir dire and in the presence of Alvarez, the trial court apprised potential jurors that the punishment range associated with murder was "imprisonment for not less than five years no more

than 99 years or life." The record does not show that Alvarez or her trial counsel objected or attempted to withdraw her guilty plea. *See Burnett v. State*, 88 S.W.3d 633, 640 (Tex. Crim. App. 2002). Likewise, the written jury charge, which clearly referenced the range of punishment Alvarez faced, was read aloud in open court without objection or on-the-record protest from Alvarez. *See id.* at 641 ("Without any evidence on the record to support an inference that appellant did not know the consequences of his plea and with a great deal of evidence to show that appellant did know the range of punishment he faced, we cannot find that the trial judge's failure to admonish appellant regarding the range of punishment misled or harmed appellant."). The authority of this state requires an appellant to do more than sit silently in order to show she was truly unaware of the range of punishment at the time she entered her guilty plea. *See id.* at 640–41.

Addressing Alvarez's second contention, because Alvarez pled open to the court and not pursuant to a plea bargain agreement, the trial court was not required to admonish her that a punishment recommendation by the State—if any—was not binding on the jury. *See Cox v. State*, 113 S.W.3d 468, 470 (Tex. App.—Texarkana 2003, pet. ref'd) ("Where there is no plea agreement, an admonishment that the prosecutor's recommendation is not binding on the trial court is immaterial.").

Lastly, we address Alvarez's assertion that trial counsel erroneously told Alvarez the State would recommend thirty-five years. "A guilty plea may be found invalid if it is induced by erroneous advice or misrepresentations by defendant's counsel or some other officer of the [c]ourt." *Ex parte Klem*, 269 S.W.3d 711, 720 (Tex. App.—Beaumont 2008, pet. ref'd). There is no evidence before us that Alvarez and trial counsel discussed a thirty-five-year recommendation in their privileged communications. *See id.* at 720–22 (holding trial counsels' assurances of probable plea agreement in another county did not render defendant's pleas involuntary); *cf. Ex parte Griffin*, 679 S.W.2d 15, 18 (Tex. Crim. App. 1984) (finding plea involuntary where trial

counsel testified she provided incorrect information regarding the nature of defendant's plea). While it is true that trial counsel represented that the prosecutor would argue for a "range of punishment" of thirty-five years and trial counsel would argue for less years, trial counsel further explained to Alvarez on the record the potential consequence of going to the jury for punishment. Specifically, trial counsel articulated to Alvarez that: "the jury would make the final decision . . . the jury would go to a separate room . . . they could give you life; but that would be their decision . . . it's out of our hands and they make the final decision." Alvarez responded in the affirmative after trial counsel made these statements. Therefore, we conclude that any erroneous representation by trial counsel was clarified when trial counsel explained that, regardless of what the State recommended or trial counsel asked for, punishment would ultimately be determined by the jury.

Accordingly, we overrule Alvarez's first issue.

### TRIAL COUNSEL'S MOTIONS TO WITHDRAW

The trial court originally appointed Alvarez counsel. However, after appointed counsel's withdrawal, Alvarez retained current trial counsel. Retained trial counsel filed his notice of appearance on January 22, 2023. Alvarez's appellate issue solely revolves around her retained trial counsel's motions to withdraw.

In her second issue, Alvarez contends the trial court abused its discretion by denying her trial counsel's two motions to withdraw—his original motion and his amended motion. As to trial counsel's original motion, Alvarez claims her trial counsel should have been allowed to withdraw because he violated the professional rules of responsibility when he knowingly undertook a representation beyond his competence—Alvarez's case. Addressing the amended motion, Alvarez avers her trial counsel should have been allowed to withdraw because he had an actual conflict opposed to her interest and she did not waive the conflict. In response, the State asserts trial counsel's original motion was meritless and untimely. The State again argues timeliness when

addressing the amended motion and contends no actual conflict of interest existed between trial counsel and Alvarez.

On May 10, 2023, trial counsel filed his original motion to withdraw citing as good cause that he was not qualified to provide representation per the Standards for Qualification of Attorneys for Appointment to Death Penalty Cases Pursuant to Article 26.052 and that he did not have experience in trying a "significant number" of felony cases. Trial counsel's motion additionally stated, "continued representation by counsel is prejudicial to [Alvarez] because she will not receive effective assistance of counsel and a fair trial in this case" because of his limited experience. The original motion acknowledged Alvarez's opposition to trial counsel's withdrawal.

The trial court initially set the motion for a hearing; however, on May 19, 2023, the trial court denied trial counsel's original motion without a hearing. The trial court set Alvarez's trial for June 27, 2023.

On June 26, 2023, trial counsel filed an amended motion to withdraw. In his amended motion, trial counsel represented there was good cause for his withdrawal because a conflict existed between Alvarez and another one of his clients. Unlike his first motion, Alvarez consented to the request to withdraw. The next day, after an on-the-record discussion prior to Alvarez's plea, the trial court determined that no actual conflict existed between Alvarez and trial counsel's former client and denied trial counsel's amended motion.

*Applicable Law*

"When it comes to a paid attorney, a defendant has the right to choose h[er] own counsel, although that right is not absolute." *Love v. State*, 600 S.W.3d 460, 475 (Tex. App.—Fort Worth 2020, pet. ref'd). This right, however, may not be used "to obstruct the judicial process or interfere with the administration of justice." *Temple v. State*, 581 S.W.3d 812, 818 (Tex. App.—Texarkana 2019, no pet.). Likewise, "[p]ersonality conflicts and disagreements about trial strategy typically

are not valid grounds for withdrawal" and a "trial court has no duty to search for counsel agreeable to a defendant." *Id*.

Whether a trial court erred in denying a motion to withdraw is reviewed for an abuse of discretion. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). "As long as the trial court's ruling was within the 'zone of reasonable disagreement,' there is no abuse of discretion and the trial court's ruling will be upheld." *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997).

*Analysis*

### A. Original Motion to Withdraw

Alvarez argues the trial court abused its discretion in denying trial counsel's original motion to withdraw because (1) trial counsel violated the Texas disciplinary rules by accepting representation that he knew was beyond his competence, (2) trial counsel was unqualified to provide representation in death penalty cases, (3) trial counsel admitted continued representation by him would result in ineffective assistance, and (4) the trial court failed to hold a required hearing on trial counsel's motion. We will address each argument in turn.

First, Alvarez contends her trial counsel should have been allowed to withdraw because he was incompetent under the rules of professional responsibility to provide representation in her case. The Texas Disciplinary Rules of Professional Conduct serve as the "minimum standards of conduct below which no lawyer can fall without being subject to disciplinary action." TEX. DISCIPLINARY RULES OF PROF'L CONDUCT PREAMBLE ¶ 7; *see also id.* ¶ 15 ("The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule. Accordingly, nothing in the rules should be deemed to augment any substantive legal duty of lawyers or the extra-disciplinary consequences

of violating such a duty."). Rule 1.01, subject to exceptions inapplicable here, states a "lawyer shall not accept or continue employment in a legal matter which the lawyer knows or should know is beyond the lawyer's competence" TEX. DISCIPLINARY RULES OF PROF'L CONDUCT R. 1.01(a). "'Competence' is defined in Terminology as possession of the legal knowledge, skill, and training reasonably necessary for the representation." *Id.* 1.01 cmt. 1; *see also id.* cmt. 2 ("In determining whether a matter is beyond a lawyer's competence, relevant factors include the relative complexity and specialized nature of the matter, the lawyer's general experience in the field in question, the preparation and study the lawyer will be able to give the matter, and whether it is feasible either to refer the matter to or associate a lawyer of established competence in the field in question.").

Lack of experience alone, however, does not render counsel incompetent to provide adequate representation. *See id.* While a larger sample size of experience could presumably lead to a greater probability of competence, Rule 1.01 itself provides guidance that prior experience is not a prerequisite to accepting and continuing representation. *See id.* A lawyer may not need to have special training or prior experience to accept employment to address legal problems of a type with which the lawyer is unfamiliar. *Id.* cmt. 3 ("Although expertise in a particular field of law may be useful in some circumstances, the appropriate proficiency in many instances is that of a general practitioner.").

Here, assuming the Texas Disciplinary Rules of Professional Conduct could be a basis for which the trial court abused its discretion—a view we neither adopt nor refute under these facts—there is no evidence that trial counsel did not hold the requisite competence of a general practitioner and had the appropriate proficiency to represent Alvarez. *Id.* cmt. 1–3; *see also* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT PREAMBLE ¶¶ 7, 15.

Second, Alvarez directs us to trial counsel's statement that he was not qualified to provide representation in death penalty cases and that he did not have experience in trying a "significant

number" of felony cases. Like Alvarez's first argument, there is no evidence in the record that at the time trial counsel filed his original motion, the State could have, or was, seeking the death penalty in her case. *See generally* TEX. CODE CRIM. PROC. art. 37.071 (establishing procedure in death penalty cases). Additionally, Alvarez has not pointed us to any authority, and we have found none, requiring a "significant number" of felony cases before a retained lawyer—such as trial counsel, with the requisite competence and appropriate proficiency of a general practitioner—could represent Alvarez on her criminal charges. Thus, it was immaterial whether trial counsel was qualified to represent individuals in capital death penalty cases, and we conclude the trial court is in the best position to assess trial counsel's qualifications since, on this record, there is no way to quantify what a "significant number of felony cases" constitutes.

Third, Alvarez claims trial counsel's statement that his continued representation would be prejudicial and amount to ineffective assistance renders the trial court's denial of his original motion an abuse of discretion. While it is true that trial counsel's original motion states his representation would be ineffective, Alvarez has not pointed to any authority supporting her proposition that his statement alone is sufficient to pre-interject ineffective assistance into a counsel's representation. *See* TEX. R. APP. P. 38.1(i); *Johnson v. State*, 352 S.W.3d 224, 227–28 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (noting the standards governing a trial counsel's motion to withdraw hinge on the individual facts of each case). On this record, we find Alvarez's argument unpersuasive.

Finally, fourth, Alvarez argues the trial court abused its discretion by failing to hold a hearing on trial counsel's original motion. Like her ineffective assistance of counsel argument in this realm, Alvarez fails to cite, and we could not locate, authority in support of her proposition. *See* TEX. R. APP. P. 38.1(i). Additionally, we observe that Alvarez opposed trial counsel's original motion. *See Roberts v. State*, 795 S.W.2d 842, 845 (Tex. App.—Beaumont 1990, no pet.) (opining

trial court did not abuse its discretion in denying motion to withdraw where defendant opposed motion). Accordingly, we hold, under these facts, that the trial court acted within the "zone of reasonable disagreement" in denying trial counsel's original motion to withdraw.

### B. Amended Motion to Withdraw

The day before trial, trial counsel filed an amended motion to withdraw as attorney of record. The argument regarding good cause in the amended motion to withdraw is, in its entirety, "[t]hat an inherent conflict exists between this client and another client within counsel's office." That same day, the trial court held an in-chambers conference with counsel; however, our record does not contain a transcript of that discussion.

Contrary to trial counsel's original motion, Alvarez consented to trial counsel's amended motion seeking to withdraw based on a conflict with a former client.[2] As discussed above, the parties appeared for trial on June 27, 2023. Prior to the trial court accepting Alvarez's guilty plea, the following exchange occurred outside of Alvarez's presence:

Trial Counsel: Judge, I wanted to get on the record that there were three offers made to Ms. Alvarez. [Discussion of plea negotiations]. However, today she has [sic] willing to plead guilty and do that in front of a jury and have the jury determine her range of punishment, and I also have a pending motion in front of the Court. The [amended] motion to withdraw which we briefly reviewed in chambers yesterday that I had in — that I have an inherent conflict between [Alvarez] and a past and current client that I cannot call as a witness or use information that this client has given me be because it's privileged. Under the rules it's — I didn't get the rule number, but under the rules that I have a conflict between clients I cannot represent either client in the case because they are diametrically opposed to one another. However, having said that, I think it's in Ms. Alvarez's best interest to plead guilty to the jury and have the jury determine her range of punishment.

Trial Court: Well.

---

[2] Alvarez additionally argues the trial court erred by failing to hold a hearing on trial counsel's amended motion. We overrule this argument for the same reasons stated above. *See* TEX. R. APP. P. 38.1(i).

Trial Counsel: And I need the Court to rule on [the amended] motion as a matter of housekeeping.

Trial Court: Actually, she's the one that's going to have to waive conflict. She would have to waive conflict, you can't waive it for her unless you want to withdraw your motion and talk to her about it. Because sounds to me like if you already had represented someone in the future – in the past, and you took her on, then you created the conflict.

Trial Counsel: No, Judge I wasn't aware of the conflict until June 22nd, the evening of June 22nd when I received the video interview from Mr. Solis where he finally gave his truthful confession.

Trial Court: And what is your conflict with and who is it?

Trial Counsel: It's with another conflict that I have — he's a past client and a current client and it creates a conflict.

Trial Court: Past conflict of what? What did you represent him on?

Trial Counsel: I represented him on cartel charges, drug conspiracy.

Trial Court: And in what court?

Trial Counsel: Federal court and you were the prosecutor.

Trial Court: I don't remember. What's his name?

Trial Counsel: Daniel Alvarez.

Trial Court: Well, is she going to waive any conflict?

Trial Counsel: I haven't discussed it with her.

Trial Court: Well, I think she needs to get back here. I don't know, [State], what do you think — how long ago was this that you represented [Danny]?

Trial Counsel: I think 2015 — 14.

State: So, the issue that I see that causes me a slight bit of the concern is that what did come out in the last proffers of evidence between [Solis]. He's going to testify, and then unbeknownst to either of us, Ms. Alvarez came out with information that neither of us knew about, and it's all about the gun involved in case. Danny Alvarez we know got the gun, left the gun at her house and took the gun. So,

he's a whole piece of this murder that neither of us knew about before. What [trial counsel] conveyed to me, and I don't think he is getting to that point, because he told me earlier was that those drug charges the Feds had told [trial counsel], you know, we think this guy might be implicated in other stuff, gun stuff. I would imagine, I'm not sure exactly what that conversation was, but that's his conflict. I mean, it's not up to me to weigh on that, and I don't think he's explaining that to you to put it in front of you.

Trial Court: Do you anticipate calling him as a witness?

State: Danny, oh, that's interesting.

Trial Court: I don't think he's on your witness list.

State: No, and to be honest I don't know that he'd tell the truth and plead the 5th. He would have a right — if I said, did you hide this gun? You know, he's going to be pleading the 5th at that point, and I can say we are going to investigate it.

Trial Court: All right. You're not going to call him in this trial.

State: No, no.

Trial Court: Then I don't know there's any conflict because he's not going to testify against your client. What do you think?

Trial Counsel: I don't think she's going to testify.

Trial Court: Okay. And he's not going to testify.

State: (Shakes head negatively).

Trial Court: He's not on the witness list anyway.

State: (Shakes head negatively).

Trial Court: Do you want to protect yourself and have her come in?

Trial Counsel: Okay. I guess.

State: So, I think — well, what [trial counsel] told me he wanted to do was get the ruling on the record.

Trial Counsel: Right just —

State: Because I know we talked about it in chambers yesterday.

Trial Counsel: And I did file the motion and it needs to get dispensed with.

Trial Court: Well, State will not call anybody or call anything to create a true conflict and you representing her and so I'm going to overrule your [amended] motion to withdraw.

Alvarez avers her trial counsel should have been allowed to withdraw because he had a conflict opposed to her interest that she did not waive. Due to her trial counsel's conflict of interest with a former client, Alvarez concludes that her trial counsel rendered ineffective assistance of counsel. In sum, Alvarez proffers that the trial court's failure to grant trial counsel's amended motion to withdraw was outside the zone of reasonable disagreement—resulting in an abuse of discretion. In response, the State, in addition to arguing timeliness, claims the trial court properly denied the amended motion because no actual conflict existed between Alvarez and Danny.

When, as here, it is asserted that ineffective assistance "derived from a conflict of interest, the proper standard is that which the Supreme Court articulated in *Cuyler v. Sullivan*: in order to prevail the appellant need show only that trial counsel 'actively represented conflicting interests' and that counsel's performance at trial was 'adversely affected' by the conflict of interest." *Acosta v. State*, 233 S.W.3d 349, 352–53 (Tex. Crim. App. 2007) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 345, (1980)). "An actual conflict of interest—as opposed to a possible or potential conflict of interest—exists if defense counsel must make a choice between advancing the defendant's interest in a fair trial or advancing another's interest, perhaps counsel's own interest, to the detriment of the defendant's interest in a fair trial." *Vasquez v. State*, 674 S.W.3d 593, 596 (Tex. App.—Houston [1st Dist.] 2023, no pet.); *Perez v. State*, 352 S.W.3d 751, 755–56 (Tex. App.—San Antonio 2011, no pet.) (opining a potential conflict is insufficient); *Quintero v. State*, 467 S.W.3d 671, 681 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("To prove an adverse impact, appellant need not show that the conflict changed the outcome or that but for the adverse impact appellant would not have pled 'guilty.'"); *see also* TEX. DISCIPLINARY RULES OF PROF'L CONDUCT

R. 1.09(a) ("Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client: (1) in which such other person questions the validity of the lawyer's services or work product for the former client; (2) if the representation in reasonable probability will involve a violation of [confidentially of information]; or (3) if it is the same or a substantially related matter.").

"The appellant bears the burden of proof by a preponderance of the evidence on a claim of conflict-of-interest ineffective assistance, which is to say that 'if no evidence has been presented on the issue' or in the event that 'the evidence relevant to that issue is in perfect equipoise,' the appellant's claim will fail." *Odelugo v. State*, 443 S.W.3d 131, 136–37 (Tex. Crim. App. 2014). "An appellant must identify specific instances in the record that reflect a choice that counsel made between possible alternative courses of action, such as eliciting (or failing to elicit) evidence helpful to one client but harmful to the other." *Gaston v. State*, 136 S.W.3d 315, 318 (Tex. App.— Houston [1st Dist.] 2004, pet. struck) (internal quotations omitted).

Here, to prevail on her assertion that the trial court erred in denying trial counsel's amended motion, Alvarez must show her trial counsel's representation of Danny resulted in an actual conflict. That is, she must identify specific instances in the record where trial counsel advanced Danny's interest, or trial counsel's interest, to the detriment of her interest. *See id.*; *Perez*, 352 S.W.3d at 755–56. Based on the record before us, Alvarez has not met her burden.

During trial, Danny was referenced in relation to where Alverez potentially procured the gun she ultimately gave to Solis to commit the murder. Approximately eight years before trial and roughly seven before the murder, trial counsel represented Danny in connection with federal drug charges. Other than the State's representation of its understanding of potential "gun stuff" relating to the federal drug charges, the record does not contain evidence that Danny was ever charged with illegal gun activity or that trial counsel represented Danny on any such charges. The record

additionally lacks evidence showing trial counsel obtained knowledge or facts through his former representation of Danny that prevented trial counsel from effectively representing Alvarez. In sum, Alvarez fails to make an evidence-based connection in the record between her trial counsel's past representation of Danny on federal drug charges and other current or former representation of Danny that shows trial counsel actively represented interests in conflict with Alvarez's own. *See Acosta*, 233 S.W.3d at 352–53; *Perez*, 352 S.W.3d at 755–56. Accordingly, no actual conflict existed; therefore, waiver of conflict is not implicated, and the trial court did not abuse its discretion in denying trial counsel's amended motion.[3]

Having found the existence of no actual conflict, we hold the trial court did not abuse its discretion in denying trial counsel's amended motion to withdraw. *King*, 29 S.W.3d at 566; *Johnson*, 352 S.W.3d at 228. We overrule Alvarez's second issue.

### INEFFECTIVE ASSISTANCE OF COUNSEL

In her final issue, Alvarez argues her trial counsel was constitutionally ineffective.

### *Applicable Law*

To prevail on an ineffective assistance of counsel claim, Alvarez must satisfy the two-element test set out in *Strickland v. Washington*. *See* 466 U.S. 668, 687 (1984). First, Alvarez must show her trial counsel's performance was deficient. *Id.* This element "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel's representation is constitutionally deficient if the assistance falls below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Conversely, counsel's representation does not fall below the

---

[3] Although trial counsel stated on the record Danny is a current client, Alvarez does not elaborate in her brief on this point, and the record is devoid of any evidence supporting or explaining any current representation of Danny by trial counsel.

objective standard of reasonableness simply because another would have selected a different trial strategy. *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Whether counsel's performance falls within the bounds of the objective standard of reasonableness is judged by "the prevailing professional norms." *Id.*

If Alvarez can show her trial counsel's representation was deficient, she must then satisfy the second *Strickland* element. That is, Alvarez must show counsel's deficient performance prejudiced her case. *Strickland*, 466 U.S. at 687. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. "In other words, [Alvarez] must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. When, as here, the focus is on her counsel's performance during punishment phase proceedings, whether prejudice exists would "depend on a reasonable probability that the [jury] would have assessed a more lenient punishment absent the errors." *Swinney v. State*, 663 S.W.3d 87, 90 (Tex. Crim. App. 2022).

Both *Strickland* elements "'must be firmly founded in the record' and 'the record must affirmatively demonstrate' the meritorious nature of the claim." *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)). As an appellate court, we strongly presume "that counsel's conduct falls within the wide range of reasonable professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006). Under this presumption, an ineffective assistance claim is a high burden to overcome via direct appeal "because the record is generally undeveloped." *Goodspeed*, 187 S.W.3d at 392; *Jackson v. State*, 877 S.W.2d 768, 772 (Tex. Crim. App. 1994) (Barid, J., concurring) ("As a general rule, one should not raise an issue of ineffective assistance of counsel on direct appeal."). "This is true with regard to the question of deficient performance—in which

counsel's conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel's reasons for failing to do something do not appear in the record." *Goodspeed*, 187 S.W.3d at 392.

This is not to say an appellant may never develop a sufficient record to vindicate a counsel's ineffectiveness via direct appeal. An appellant may develop a sufficient record through a motion for a new trial or other post-judgment motion that provides counsel with an opportunity to, for example, provide reasoning and guidance on trial strategy—which may or may not justify counsel's action or inaction. *Macias v. State*, 539 S.W.3d 410, 417 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). "Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was so outrageous that no competent attorney would have engaged in it." *Goodspeed*, 187 S.W.3d at 392 (internal quotations omitted).

*Analysis*

In line with her involuntary plea argument, Alvarez also argues trial counsel was constitutionally ineffective when trial counsel misrepresented the range of punishment. As outlined above, we conclude, on this record, that any misinformation from trial counsel regarding the "range of punishment" the State would argue to the jury was quickly dispelled by trial counsel and the State—negating any potential prejudice to Alvarez.

Alvarez further argues her trial counsel was constitutionally ineffective by (1) failing to advocate to the jury for leniency or a reduced sentence during the punishment phase, (2) failing to impeach or challenge Solis's testimony, and (3) failing to object to inadmissible, prejudicial, and extraneous testimony regarding Solis and his wife's statements that Alvarez: had vandalized Solis's mother-in-law's home; had connections to Mexican authorities; and had previously killed someone. The State asserts trial counsel's performance during the punishment phase was objectively reasonable and within the wide breadth of sound trial strategy.

On this record, we conclude Alvarez did not establish that her trial counsel's performance fell below an objective standard of reasonableness because he failed to implore the jury to impose a thirty-five-year sentence or less for Alvarez. Nor do we find ineffectiveness on the part of trial counsel for allegedly failing to impeach or challenge Solis's testimony. Likewise, we conclude Alvarez did not establish that her trial counsel's performance fell below an objective standard of reasonableness because he failed to object to allegedly inadmissible, prejudicial, and extraneous testimonial evidence.

Alvarez raises her ineffective assistance of counsel claims for the first time on appeal. Alvarez did not file a motion for a new trial or any other post-judgment motion complaining of her trial counsel's performance and developing a record applicable to her ineffective assistance claim. *Goodspeed*, 187 S.W.3d at 392; *Macias*, 539 S.W.3d at 417. Although Alvarez may raise these issues and arguments for the first time on appeal, this record is silent concerning the trial counsel's reasons for deciding to refrain from veering into specific arguments or objections. *See Lopez*, 343 S.W.3d at 144; *Gone v. State*, 54 S.W.3d 27, 33–34 (Tex. App.—Texarkana 2001, pet. ref'd) (overruling ineffective assistance claim where the record was silent on trial counsel's reasoning to refrain from objecting to references to extraneous offenses); *Strahan v. State*, 617 S.W.3d 198, 206–07 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd) (overruling ineffective assistance claim related to an alleged failure to object to testimony regarding a witness's credibility where the record was silent on trial counsel's reasoning); *see also Haagensen v. State*, 346 S.W.3d 758, 766 (Tex. App.—Texarkana 2011, no pet.) ("Trial counsel's strategy in not objecting may have been an effort to build rapport with the jury and prevent the jury from concluding he was attempting to hide information from them. Counsel also may have not objected because an objection would have emphasized the evidence.").

After reviewing the record as a whole, we conclude Alvarez has failed to rebut the presumption that her trial counsel's performance fell within an objective standard of reasonableness based on the prevailing professional norms. *Lopez*, 343 S.W.3d at 144; *Garcia v. State*, 57 S.W.3d 436, 440–41 (Tex. Crim. App. 2001); *Vega v. State*, 610 S.W.3d 79, 84 (Tex. App.—San Antonio 2020, no pet.). Alvarez has failed to carry her burden on appeal. Therefore, we overrule her final issue.

## CONCLUSION

Having overruled Alvarez's three appellate issues, we affirm the judgment of the trial court.

Lori I. Valenzuela, Justice

DO NOT PUBLISH